Nelson BEEBE et al.,

v.

The UNITED STATES

No. 326–79C.

United States Court of Claims.

Jan. 28, 1981.

Mitchell J. Notis, Washington, D. C., attorney of record for plaintiff. John R. Rosa, Washington, D. C., of counsel.

Lenore C. Garon, Washington, D. C., with whom was Asst. Atty. Gen. Alice Daniel. Ramsey G. Cole, Jr., Washington, D. C., of counsel.

Before COWEN, Senior Judge, and KASHIWA and BENNETT, Judges.

### ON DEFENDANT'S AND PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT

COWEN, Senior Judge:

Plaintiffs are current or retired firefighters who are or were employed by the Department of Agriculture at the Plum Island Disease Control Center (PIADC). Claiming that the government violated the Fair Labor Standards Act (FLSA or the Act), 29 U.S.C. sec. 201, *et seq.*, by failing to pay them the full amount of overtime pay due them, they brought this action to recover back pay, plus liquidated damages, attorneys' fees and costs. The principal issue presented is whether the time allowed plaintiffs as eating and sleeping time during their regularly scheduled tours of duty should be included in the hours of work for computing their overtime pay under the FLSA. We answer this question in the affirmative and grant plaintiffs' cross-motion for summary judgment to the extent of holding that they are entitled to recover the claimed overtime pay for periods not barred by the statute of limitations, plus attorneys' fees and costs. Since the claim for liquidated damages involves factual issues, that question, and a determination of the amount of overtime pay and attorneys' fees which plaintiffs are entitled to recover, are remanded for trial.

### I. Factual and Legislative Background

It was not until the passage of the Fair Labor Standards Amendments of 1974, Pub.L. 93–259, 88 Stat. 55 (April 8, 1974) that the federal government, as an employer, became subject to the FLSA. Most federal employees who receive overtime pay under the Act are compensated under 29 U.S.C. sec. 207(a), which provides that no employer shall employ any employees for a longer work week than 40 hours, unless they receive compensation at a rate not less than 1½ times the regular rate for such excess hours of work.

Between the time the Act became applicable to federal employees on May 1, 1974, and until January 1, 1975, federal firefighters were exempted from coverage under the overtime provision of the FLSA. However, effective as of January 1, 1975, section 7(k) was added to the Act. It is codified in 29 U.S.C. as section 207(k) and provides in pertinent part:

(k) No public agency shall be deemed to have violated subsection '(a) of this section with respect to the employment of any employee in fire protection activities * * * if—

(1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed 240 hours; or

(2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 240 hours bears to 28 days, compensation at a rate not less than one and one-half times the regular rate at which he is employed.

Effective on January 1, 1976, "240 hours" in the section of law above was reduced to "232 hours" and as of January 1, 1977, "232 hours" was changed to "216 hours."

An explanation for the removal of the exemption and a statement of the Congressional purpose in enacting the above-quoted provision is contained in House Conference Report No. 93–953, 93d Cong., 2d Sess., which is *reprinted in [1974] U.S.Code Cong. & Adm.News*, vol. 2, pp. 2811, 2864. The Conference Report provides in pertinent part as follows:

### OVERTIME EXEMPTION FOR POLICEMEN AND FIREMEN

Under the Senate bill a limited overtime exemption was authorized for policemen and firemen under employer-employee agreements providing a 28-day work period and if during such period such employees receive overtime compensation for employment in excess of—

* * * * * *

The House amendment provided for a complete overtime exemption for policemen and firemen.

The Senate receded with an amendment which provides that firefighters and law enforcement personnel receive overtime compensation for tours of duty in excess of—

(1) 240 hours in a work period of 28 days (60 hours in a work period of 7 days) or in the case of any work period between 7 and 28 days, a proportionate number of hours in such work period) during the year beginning January 1, 1975.

(2) 232 hours in a work period of 28 days (58 hours in a work period of 7 days) or in the case of any work period between 7 and 28 days, a proportionate number of hours in such work period) during the year beginning January 1, 1976; and

(3) 216 hours in a work period of 28 days (54 in a work period of 7 days) or in the case of any work period between 7 and 28 days, a proportionate number of hours in such work period) during the year beginning January 1, 1977, and thereafter, * * *.

\* \* \* \* \* \*

The conference substitute further provides for averaging duty hours over the work period so long as the work period is no greater than 28 consecutive days. The conference substitute departs from the standard FLSA "hours of work" concept directed primarily at industrial and agricultural occupations and adopts an overtime standard keyed to the length of the tours of duty, thereby reflecting the uniqueness of the firefighting service. The Secretary is directed to adopt regulations implementing these new and unique provisions, including regulations defining what constitutes a tour of duty.

The legislative history shows that the overtime pay provisions of the FLSA applicable to federal firefighters differ significantly from the FLSA overtime pay provisions for most other federal employees. First, the federal firefighters were exempt from the overtime pay provisions of the Act prior to January 1, 1975, while other federal employees were entitled to overtime compensation after May 1, 1974. Second, section 7(k) of the Act adopted a new standard for federal firefighters; it enables the employer to utilize "work periods" of not more than 28 days in determining the firefighters' entitlement to overtime pay, while the general overtime provision requires the computation of FLSA overtime entitlement for each "work week." Also, the FLSA overtime is payable to federal firefighters based upon the number of hours in their "tour of duty" that exceeds the number of hours specified in section 7(k), while other federal employees covered by the Act are entitled to overtime pay only for hours of work during which they are employed for more than 40 hours in a work week.

In making the federal government as an employer subject to the Act, Congress authorized the Civil Service Commission to administer the FLSA in the federal sector. Section 4(f) of the Act (29 U.S.C. sec. 204(f)).[1]

The administration of the Act with respect to federal firefighters was accomplished by the Civil Service Commission through the issuance of Federal Personnel Manual (FPM) Letter 551–5 in an advance edition of December 27, 1974, entitled "Instructions for Applying the Fair Labor Standards Act (FLSA) to Federal Employees Engaged in Fire Protection Activities or Law Enforcement Activities." Attachment 2 to FPM Letter 551–5 contained regulations giving effect to the special overtime provisions of section 7(k) of the Act. The following portions of attachment 2 are particularly pertinent to this action:

C. *Tour of Duty and Hours of Work Under Section 7(k) of the FLSA*

1. *General Statement*

---

[1] The Civil Service Commission was replaced for purposes of the administration of the Act by the Office of Personnel Management (OPM) on January 1, 1979. In the private sector, administrative authority to enforce the FLSA lies with the Department of Labor. (29 U.S.C. sec. 204(a)–(e).)

In extending the coverage of the FLSA to employees engaged in fire protection activities or law enforcement activities, Congress was aware that the work schedules of these employees vary from the work schedules of other employees, and clearly recognized that some adjustment would have to be made in the usual rules for determining hours of work in their case. Thus, Congress departed from the standard "hours of work" concept and adopted an overtime standard keyed to the length of the "tour of duty". In addition, Congress also adopted a new work period concept which may be used instead of the usual workweek basis for determining overtime hours.

2. *Tour of Duty*

The term "tour of duty," as used in section 7(k) of the FLSA, means the period during which an employee is on duty. It may be a scheduled or unscheduled period. Scheduled periods refer to shifts, i. e., the period of time which elapses between scheduled arrival and departure times (as in the case for example, of a firefighter who has a scheduled 24 hour shift from 8:00 a. m. one morning until 8:00 a. m. the next morning; or in the case for example, of a criminal investigator who has a scheduled eight and one-half hour shift from 8:30 a. m. until 5:00 p. m. the same day), or to scheduled periods outside the shift (as in the case for example, of a special detail involving crowd control during a parade or other such event. * * *

\* \* \* \* \* \*

4. *Sleeping and Meal Time*

a. *Duty of 24 Hours or Less.* Sleep and meal time shall *not* be excluded from hours worked in the case of any employee engaged in fire protection activities or law enforcement activities when the employee is required to be on duty for 24 hours or less.

b. *Duty of More Than 24 Hours.* Sleep and meal time may, however, be excluded in the case of fire protection or law enforcement employees who are on duty for more than 24 hours, but only if the employer and the employee have agreed to exclude this time. In the absence of any agreement, sleep and meal time shall constitute hours of work. * *

Prior to January 1, 1975, and in accordance with law in effect at that time, plaintiffs were paid under the "two-thirds rule." Under this judicially approved rule, 8 of every 24 hours of plaintiffs' tours of duty were excluded as non-compensable time. *See Collins v. United States*, 141 Ct.Cl. 573 (1958).

The parties are agreed that since January 1, 1975, the plaintiffs have been required to serve on continuous 72-hour tours of duty during each 6 days.[2] After these tours of duty, they could leave Plum Island, but were required to report back there for an additional tour of duty 72 hours later. Thus, during each 28-day period since January 1, 1975, plaintiffs have been required to remain on duty in excess of the number of hours which entitle them to overtime compensation under 29 U.S.C. sec. 207(k)(1), unless the defendant was legally authorized to deduct eating and sleeping time in computing their overtime pay.

As will be shown *infra*, the Department of Agriculture and the OPM denied plaintiffs' claims on the grounds that after January 1, 1975, plaintiffs were properly compensated under the "two-thirds rule" and FPM Letter 551–5, attachment 2, as interpreted by Agriculture and OPM. Late in February 1975, plaintiffs' union representative at PIADC received a copy of FPM Letter 551–5, which contained instructions for applying the FLSA to the federal firefighters. Thereafter, in March 1975, he filed an informal grievance against the PIADC management in behalf of the PIADC firefighters, complaining that in computing plaintiffs' entitlement to FLSA overtime, the management was improperly deducting 8 hours of each 24-hour work period for eating and sleeping time. No reply to this grievance was received, so that

---

**2.** Defendant's Reply Brief at p. 1.

in February 1976, the union representative filed a formal grievance with the agency, in which it was again asserted that the Department of Agriculture was illegally deducting eating and sleeping time from the FLSA· overtime pay due the firefighters. On July 23, 1976, the union representative was informed by an official of the Agriculture Research Service that the grievance could not be accepted under the Department's grievance procedure because the Civil Service Commission had established an appeals procedure. Consequently, he said, the agency grievance system could not cover any matter subject to administrative review outside the Department of Agriculture.

In June 1976, plaintiffs' union representative and the PIADC management entered into negotiations to establish a new collective bargaining agreement. Although the union proposal did not make any reference to eating and sleeping time for the computation of overtime, the PIADC team proposed that sleeping and meal time should be excluded from the hours worked by the firefighters who were on duty for more than 24 hours. The union then submitted a counter-proposal that no deductions should be made for the sleeping and eating time allowed firefighters during their tours of duty. As a result of the counter-proposal, the parties reached an impasse, and after the chief negotiator for management learned that the union intended to appeal the issue to the Civil Service Commission, both parties mutually agreed to withdraw their proposals.

Plaintiffs submitted their appeal and claim to the Regional Director of the Civil Service Commission in November 1976, and supplemented the appeal with additional information in a letter of February 23, 1978. The Regional Director rejected plaintiffs' claim in an opinion issued January 17, 1979. He held that FPM Letter 551–5, attachment 2, precluded plaintiffs' right to recover, because they had implicitly agreed to exclude sleeping and eating time in the computation of their overtime pay. He stated that in drafting the regulations to carry out the Congressional mandate, the

Department of Labor had provided that firefighters having a tour of duty of more than 24 hours are subject to the same provisions which apply to other employees who have a tour of duty of more than 24 hours, and therefore, the firefighters should be treated in the same manner as all other employees with such tours of duty. He concluded that since the plaintiffs had continued, since January 1, 1975, to accept their pay checks which excluded sleeping and eating time, they had thereby implicitly agreed to exclude such sleeping and eating time.

On February 3, 1975, plaintiffs filed a motion for rehearing, but no further action was taken by the OPM, and on July 24, 1979, plaintiffs filed their suit in this court.

## II. The Court's Jurisdiction

█ The court has jurisdiction of the plaintiffs' claim by virtue of the provisions of 29 U.S.C. sec. 207(k), FPM Letter 551–5, and 29 U.S.C. sec. 216(b), which provides:

§ 216. * * *

\* \* \* \* \* \*

(b) Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation as the case may be, and an additional equal amount as liquidated damages. Action to recover such liability may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. * * *

The defendant states that the Regional Director's decision is supported by substantial evidence, but does not argue that the court's jurisdiction is limited to a review of the administrative decision. Such a contention would be contrary to 29 U.S.C. sec. 204(f) which authorizes the Civil Service Commission to administer the Act. This section provides in part:

* * * Notwithstanding any other provision of this chapter, or any other law, the Civil Service Commission is authorized to administer the provisions of this chapter with respect to any individual employed by the United States (other than an individual employed in the Library of Congress, United States Postal Service, Postal Rate Commission, or the Tennessee Valley Authority). Nothing in this subsection shall be construed to affect the right of an employee to bring an action for unpaid minimum wages, or unpaid overtime compensation, and liquidated damages under section 216(b) of this title. (As amended Apr. 8, 1974, Pub.L. 93–259, §§ 6(b), 24(c), 27, 88 Stat. 60, 72, 73).

We agree with plaintiffs that this provision grants them the right to a *de novo* determination by the court of all issues, and that no finality attaches to the Regional Director's findings of fact or conclusions of law. In its regulations, the Civil Service Commission has recognized that the plaintiffs' right to bring this action is in no way contingent upon their exhaustion of administrative remedies or appeals to OPM. *See* FPM Letter 551–9(2) which states:

> The law itself also establishes the right for an employee to bring action in a U.S. district court either directly or after having received the CSC decision in his/her FLSA complaint.

III. *The Implied Agreement Defenses*

■ As previously stated, plaintiffs' claims were denied administratively on the ground that since January 1, 1975, they had continued to accept pay checks which excluded eating and sleeping time from hours worked, and that this was sufficient to constitute an implied agreement within the

meaning of FPM Letter 551–5, attachment 2 and a Department of Labor regulation upon which the FPM Letter was based.

In his adverse decision of January 17, 1979, the Regional Director of OPM quoted from the House Conference Report (see Part I) and was aware of the fact that Congress had adopted a new overtime standard for firefighters, keyed to the length of their tours of duty. However, he erroneously found that in drafting regulations to carry out the Congressional mandate to define a tour of duty, the Department of Labor had provided:

> * * * firefighters who have a tour of duty of "more than 24 hours" are subject to the same basic provisions which apply to other types of employees who have a tour of duty of "24 hours or more." Thus, firefighters who have consecutive 72-hour tours must be treated in the same manner as all other employees with such tours of duty.

> * * * * * *

He then went on to hold that since plaintiffs had accepted pay checks which excluded eating and sleeping time, this was enough to constitute an implied agreement within the meaning of the regulations.[3]

Contrary to the Regional Director's finding, the Department of Labor issued new regulations on December 20, 1974, shortly after Pub.L. 93–259 was enacted. These regulations are codified in 29 C.F.R. sections 553.1 to 553.21 (1979) and were issued for the purpose of applying the new law specifically to "Employees of Public Agencies Engaged in Fire Protection or Law Enforcement Activities (Including Security Personnel in Correctional Institutions)," rather than to all other employees with

---

**3.** The Regional Director's error was compounded by his reliance on *Ariens v. Olin Mathieson Chemical Corp.*, 382 F.2d 192 (6th Cir. 1967) to find the existence of an implied agreement in this case. The decision is inapposite. There, the court expressly found that during the period for which overtime was claimed, the employer and the union representing the firefighters had entered into an agreement which stated that the time designated as sleep time would not be considered as hours worked and would not be compensable. Also, when the firefighters began working, they were supplied with printed work schedules which excluded sleeping time from pay time, and they continued thereafter to accept pay checks on that basis. Moreover, the court in that case was not confronted with a statute, which was enacted after the firefighters began work and which contained new provisions for the computation of overtime pay.

duty tours of 24 hours or more, as stated in the decision of the Regional Director.

Section 553.12 of these regulations, entitled "General statement," recognized the special concern which Congress had expressed in behalf of the firefighters in the Conference Report. Section 553.12(a) provides:

(a) In extending the Act's coverage to public agency employees engaged in fire protection and law enforcement activities, Congress, recognizing the uniqueness of these activities, established section 7(k) which permits the computation of hours worked on the basis of a work period (which can be longer than a workweek) and which bases the overtime requirements on a work period concept. In adding this provision, Congress made it clear that some adjustment would have to be made in the usual rules for determining compensable hours of work (Conf.Rept. 93–953, p. 27) and where the employer elects section 7(k), these rules must be used for purpose of both the Act's minimum wage and overtime requirements.

Section 553.13, entitled "Tour of duty," provides in pertinent part:

The term "tour of duty," as used in section 7(k), means the period during which an employee is on duty. It may be a scheduled or unscheduled period. Scheduled periods refer to shifts, i. e., the period of time which elapses between scheduled arrival and departure times, or to scheduled periods outside the shift, as in the case of a special detail involving crowd control during a parade or other such event. * * *

Section 553.14, which states the general rules for determining compensable hours of work, provides that such hours generally include all time during which the employee is on duty on the employer's premises.

Section 553.15(b), provides in pertinent part:

(b) Sleep and meal time may, however, be excluded in the case of fire protection or law enforcement employees who are on duty for more than 24 hours, but only if there is an express or implied agreement between the employer and the employee to exclude such time. In the absence of any such agreement, sleep and meal time will constitute hours of work. * * *

We think that the only reasonable construction of these regulations is that they were intended to apply prospectively to conform with the Congressional purpose and that the reference to "implied agreement" in section 553.15(b) means an agreement entered into after the Act became applicable to firefighters and after the regulations were promulgated. It would be anomalous to hold that the regulations mean that since plaintiffs had, in the past, accepted pay computed according to the law then in effect, they thereby waived legal rights which were not granted to them until January 1, 1975.

By reference to Part I, it will be seen that FPM Letter 551–5, attachment 2, is not only consistent with 29 C.F.R. sec. 553.-15(b), but that except for the omission of the word "implied," it is a virtual copy of the Department of Labor regulation. Consequently, we think it should be given the same interpretation.

Despite the Regional Director's decision, we think that the Civil Service Commission clearly understood that firefighters with a tour of duty of more than 24 hours were not "subject to the same basic provisions which apply to other types of employees who have a tour of duty of 24 hours or more." This is shown by FPM Letter 551–14 containing "Instructions for Applying the Fair Labor Standards Act (FLSA) to Federal Employees in Receipt of Annual Premium Pay (Other Than Those Employees Engaged in Fire Protection Activities or Law Enforcement Activities)." Attachment 1 to this letter provides in pertinent part as follows:

3. *Allowable deductions of meal and sleep periods from "hours of work."* An agency may exclude bona fide meal periods during the employee's regularly scheduled workday. An employee in receipt of annual premium pay for standby duty who is on duty for 24 hours or more

receives basic pay plus annual premium pay for this tour of duty arrangement. Such a tour of duty typically consists of productive work, standby duty, and eating and sleeping periods. Provided an employee has a bona fide sleep period an agency may exclude up to 8 hours of sleep time for such a tour of duty. * * *

The defendant has admitted that plaintiffs have never entered into an express written agreement with the Department of Agriculture to exclude sleep and meal time from the computation of hours worked under the FLSA. Since defendant's case rests upon the alleged existence of an implied agreement, it is necessary to determine whether, under the law of implied contracts, plaintiffs implicitly consented to the exclusion. In *Operations Manuals, Inc. v. United States*, 205 Ct.Cl. 854, 855 (1974), we held:

> In order for a contract implied in fact to exist, there must be a meeting of minds and mutual consent to be bound. 17 Am.Jur.2d *Contracts* sec. 3 (1964); *J. C. Pitman & Sons, Inc. v. United States*, 161 Ct.Cl. 701, 705, 317 F.2d 366, 368 (1963); *Porter v. United States*, 204 Ct.Cl. 355, 365–66, 496 F.2d 583, 590 (1974); and *Algonac Mfg. Co. v. United States*, 192 Ct.Cl. 649, 428 F.2d 1241 (1970). * * *

*See also*, 1 *Williston on Contracts* 3 (3rd ed.) 1957.

The defendant has been unable to point to any statement, act or deed on the part of plaintiffs or their union representatives since January 1, 1975 which could be construed as "a meeting of minds and mutual consent" to the exclusion. On the contrary, the undisputed evidence shows that from the time the plaintiffs first became acquainted with the provisions of FPM Letter 551–5 until they filed this suit, they protested the deduction of sleep and meal time in computing their overtime pay and have continuously sought to obtain the relief which is claimed in this action. Nevertheless, the defendant insists that by their acceptance of overtime pay computed in accordance with the two-thirds rule, plaintiffs have im-

plicitly agreed to the sleep and meal time exclusion. The time that elapsed between March 1975, when plaintiffs' union representative filed the informal grievance, and January 1979, when the Regional Director denied plaintiffs' claims, was 46 months. In order to preserve their rights under defendant's theory, it would have been necessary for plaintiffs to refuse to accept their pay checks for a period of nearly 4 years. We reject out of hand the government's tenuous argument, because we find there is no legal basis for it. Upon the facts before us, the language of the Supreme Court in *Tennessee Coal Co. v. Muscoda Local*, 321 U.S. 590, 602, 64 S.Ct. 698, 705, 88 L.Ed. 949 (1944)[4] seems particularly appropriate:

> But in any event it is immaterial that there may have been a prior custom or contract not to consider certain work within the compass of the workweek or not to compensate employees for certain portions of their work. The Fair Labor Standards Act was not designed to codify or perpetuate those customs and contracts which allow an employer to claim all of an employee's time while compensating him for only a part of it. * * *

As stated in Part I, the negotiations in 1976 reached an impasse. When it became known that the union proposed to appeal to the Civil Service Commission in an attempt to obtain the relief denied in the negotiations, both parties withdrew their proposals. In another effort to show that plaintiffs agreed to the exclusion of the time in issue, defendant has advanced a unique argument. Defendant says that the withdrawal of the union's proposal left intact the past practice and constituted an implicit agreement that plaintiffs would not be compensated for sleep and meal time. No authority has been cited in support of this astounding proposition and we feel certain that it cannot be squared with any authoritative definition of an implied contract.

As for defendant's tenacious reliance on the "two-thirds rule," it need only be pointed out that that rule was promulgated by

---

**4.** *See also, Local 6167, UMW v. Jewell Ridge Coal Corp.*, 145 F.2d 10, 12 (4th Cir. 1944).

the Civil Service Commission pursuant to the authority granted by section 201 of the Federal Employees Pay Act of 1945, 59 Stat. 295. *See Collins v. United States, supra.* The judicial decisions which upheld the two-thirds rule were also handed down long before January 1, 1975, when the Fair Labor Standards Act became applicable to plaintiffs. Manifestly, the rule and the court decisions approving it, are not relevant to and have no effect upon rights plaintiffs acquired under a subsequently enacted statute.

## IV. *The Invalid Regulation Defense*

■ In a posture which is unusual for it to assume in defending the United States in this court, the defendant in its reply brief has attacked the validity of FPM Letter 551–5. The argument is that the pay of federal officers and employees is fixed by Congress and that the FPM Letter is invalid since it authorizes the negotiation of rates of pay which are specifically established by statute. We find there is no merit to this argument.

Initially, it should be pointed out that the PIADC officials took a position which is in direct conflict with this contention. They apparently believed that the negotiation of the eating-and-sleeping-time issue was legally permissible, because as we have shown, they negotiated with plaintiffs' union representatives to the point of impasse.

5 U.S.C. sec. 7102(2)[5] guarantees the right of federal employees "to engage in collective bargaining with respect to conditions of employment through representatives chosen by employees under this chapter," except as otherwise provided by law. 5 U.S.C. sec. 7103(a)(14) defines "conditions of employment" to include "personnel policies, practices, and matters, whether established by rule, regulation, or otherwise, affecting working conditions, except that such term does not include policies, practices, and matters * * * specifically provided for by Federal statute * * *." In support of its argument, defendant refers us to 5 U.S.C. sections 5311, 5332, 5343, 5542(a)

and 29 U.S.C. sec. 207(a)(1). An examination of these statutes reveals that sleeping and eating time is not even mentioned in any of them. The FPM letter merely calls for an agreement or negotiation on the issue of whether certain time shall be included in the employee's total hours worked for the purpose of computing FLSA overtime entitlement. Such an agreement does not involve any change in the plaintiffs' rate of pay which, as defendant correctly states, is set by statute. The statutory term "conditions of employment" is a broad and general term and we think the determination of whether firefighters should have their sleep and meal time included in the computation of their "hours worked" is a personnel policy, practice or matter which affects working conditions. As we have said, defendant has not cited any federal statute which provides for the treatment of sleep and meal time in the computation of "hours worked" for overtime pay purposes.

In an analogous case, *Bendure v. United States,* 213 Ct.Cl. 633, 554 F.2d 427 (1977) we held that it was lawful for the employees and management to negotiate the right of the employees to environmental differential pay. In that case as here, the employees' claim was based upon an FPM letter promulgated by the Civil Service Commission; the standards set forth in the regulation were not specifically covered by statute.

## V. *The Statute of Limitations Issue*

■ Defendant initially contended that plaintiffs' claims are barred in their entirety by the 2-year statute of limitations set forth in 29 U.S.C. sec. 255, which provides in pertinent part:

§ 255. *Statute of limitations*

Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S.C. 201 et seq.], the Walsh-Healey Act [31 U.S.C. 35

---

5. Prior to the enactment of sections 7102 and 7103, substantially the same rights were granted to employees by Ex.Order No. 11491, 34 F.R. 17605; *see* note to 5 U.S.C.A. 7101.

et seq.], or the Bacon-Davis Act [40 U.S.C. 276a et seq.]—

(a) if the cause of action accrues on or after May 14, 1947—may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued; * * *

However, defendant has acknowledged that plaintiffs' claims are continuing claims and that a separate cause of action accrued each payday when the PIADC excluded the overtime compensation they claim in this suit. This is the correct rule of law. *Hodgson v. Behrens Drug Company*, 475 F.2d 1041 (5th Cir. 1973), *Friedman v. United States*, 159 Ct.Cl. 1, 310 F.2d 381 (1962), *cert. denied sub. nom. Lipp v. United States*, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963).

Plaintiffs do not claim that defendant's violation of the FLSA was willful. Therefore, the statute bars their recovery of any overtime compensation due them prior to July 24, 1977, their petition having been filed July 24, 1979.

### VI. *The Section 259 Defense*

■ As previously stated, defendant has challenged the validity of FPM Letter 551–5. However, in its reply brief it contends, somewhat inconsistently, that since the PIADC relied on that regulation and the administrative practice, the government is shielded from liability by the provisions of 29 U.S.C. sec. 259.[6] Section 259 provides in pertinent part:

§ 259. *Reliance in future on administrative rulings, etc.*

(a) In any action or proceeding based on any act or omission on or after May 14, 1947, no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section, or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect.

(b) The agency referred to in subsection (a) of this section shall be—

(1) in the case of the Fair Labor Standards Act of 1938, as amended—the Administrator of the Wage and Hour Division of the Department of Labor; * * *

Plaintiffs argue that since FPM Letter 551–5 was not promulgated by the Administrator of the Wage and Hour Division of the Department of Labor as specified in section 259(b), section 259(a) does not apply to defendant's action in this case. However, since Congress authorized the Civil Service Commission to administer the FLSA in the federal sector, we shall assume for the purposes of the decision in this case only that section 259 is applicable to regulations issued by the Civil Service Commission. Proceeding on that assumption, we find that the defendant is not entitled to avail itself of this defense for two reasons.

First, the courts have held that the test of an employer's good faith in relying on an administrative order or regulation is "whether he acted as a reasonably prudent man would have acted under similar circumstances." *Kam Koon Wan v. E. E. Black, Ltd.*, 188 F.2d 558, 562 (9th Cir. 1951).

---

**6.** Defendant's Reply Brief at p. 11.

29 C.F.R. sec. 790.15 (1979), a regulation promulgated by the Department of Labor provides:

* * * The legislative history of the Portal Act makes it clear that the employer's "good faith" is not to be determined merely from the actual state of his mind. Statements made in the House and Senate indicate that "good faith" also depends upon an objective test—whether the employer, in acting or omitting to act as he did, and in relying upon the regulation, order, ruling, approval, interpretation, administrative practice or enforcement policy, acted as a reasonably prudent man would have acted under the same or similar circumstances. "Good faith" requires that the employer have honesty of intention and no knowledge of circumstances which ought to put him upon inquiry. [footnotes omitted.]

A review of the undisputed evidence convinces us that the defendant did not rely upon the FPM Letter or the prior administrative practice in good faith, because it did not act as a reasonably prudent man would have acted under the same circumstances. The government reasonably should have known that the regulation required a written agreement or a mutual understanding that plaintiffs' meal and sleep time would be excluded from their "hours worked." At no time after plaintiffs learned of the promulgation of FPM Letter 551–5 did they or their union representatives give the defendant reasonable grounds to believe that plaintiffs had consented to the exclusion of the sleep and meal time. As has been discussed in detail in Part I, defendant was aware of the grievances filed by the union; defendant found it necessary to submit a collective bargaining proposal in the negotiations with plaintiffs' representatives in 1976; defendant knew that no agreement

was reached during these negotiations. Defendant also knew that plaintiffs had appealed the issue to the Civil Service Commission. At the very least, the events we have described were sufficient to put the defendant on inquiry to determine whether its reliance on the two-thirds rule was justified after Congress had legislated a provision specifically applicable to firefighters and introduced a new concept regarding overtime pay for these employees.

In the second place, we find that defendant's action does not meet the requirements of 29 C.F.R. sec. 790.14(a) which provides:

The "good faith" defense is not available to an employer unless the acts or omissions complained of were "in conformity with" the regulation, order, ruling, approval, interpretation, administrative practice or enforcement policy upon which he relied. This is true even though the employer erroneously believes he conformed with it and in good faith relied upon it; actual conformity is necessary. [footnotes omitted.]

The defendant's erroneous construction of FPM Letter 551–5 and defendant's mistaken belief that plaintiffs had implicitly agreed to the exclusion of sleeping and eating time in computing their overtime pay, deprives the defendant of the section 259 defense. *See United Biscuit Company of America v. Wirtz*, 359 F.2d 206, 213 (D.C. Cir.1966); *Knudsen v. Lee & Simmons, Inc.*, 89 F.Supp. 400, 405 (S.D.N.Y.1949), and *Pilkenton v. Appalachian Regional Hospitals, Inc.*, 336 F.Supp. 334 (W.D.Va.1971).

VII. *The Claim for Liquidated Damages*

Pursuant to 29 U.S.C. sec. 216(b) and 29 U.S.C. sec. 260,[7] plaintiffs seek recovery of liquidated damages. They assert that they are entitled to recover FLSA overtime pay

---

7. 29 U.S.C. sec. 260 provides:

"In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for

believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title. (As amended Apr. 8, 1974, Pub.L. 93–259, § 6(d)(2)(B), 88 Stat. 62.)"

and that since the defendant's failure to pay such overtime compensation was not based on a reasonable belief that the Act was not violated, plaintiffs should be awarded liquidated damages. After a careful examination of the documents that have been submitted with the motions for summary judgment and the facts which have been admitted, we find that this issue involves questions of fact which cannot be resolved on summary judgment and that it must be remanded to the trial division for determination.

 Our holding that the plaintiffs are entitled to recover overtime pay and our rejection of defendant's defense which is based on 29 U.S.C. sec. 259, do not automatically entitle plaintiffs to liquidated damages. The criteria to be applied in awarding liquidated damages are quite different from those which a court must utilize in deciding the validity of a section 259 defense. The "good faith" referred to in section 260 means "an honest intention to ascertain what the Fair Labor Standards Act requires and to act in accordance with it." *Addison v. Huron Stevedoring Corp.*, 204 F.2d 88, 93 (2d Cir. 1953), *cert. denied* 346 U.S. 877, 74 S.Ct. 120, 98 L.Ed. 384 (1953). Whether an honest intention existed, necessitates a subjective inquiry. *Addison*, 204 F.2d at 93, and *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 464 (D.C.Cir.1976). Obviously, such a subjective inquiry involves the presentation of testimony.

The second prong of 29 U.S.C. sec. 260 calls for a determination as to whether the employer had reasonable grounds for believing that his act or omission was in compliance with the Act, and this is a requirement that involves an objective standard. *Laffey*, 567 F.2d at 464. Proof that the law is uncertain, ambiguous or complex may provide reasonable grounds for an employer's belief that he is in conformity with the Act, even though his belief is erroneous.[8] *Kelly v. Ballard*, 298 F.Supp. 1301 (S.D.Cal. 1969); *Laffey*, 567 F.2d at 466.

Although the burden of proof under 29 U.S.C. sec. 260 is upon the defendant, it is entitled to offer evidence on remand in an effort to prove that plaintiffs are not entitled to liquidated damages.

## VIII. *The Claim for Attorneys' Fees and Costs*

Plaintiffs request that they be awarded reasonable attorneys' fees and costs pursuant to 29 U.S.C. sec. 216(b), which provides *inter alia* that "the court in such action shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow reasonable attorneys' fees to be paid by the defendant, and costs of the action." In construing section 216(b), the courts have held that where an employee prevails on a claim for overtime compensation, an award of attorneys' fees and costs is mandatory. *Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185, 1191 (5th Cir. 1979); *Nitterright v. Claytor*, 454 F.Supp. 130, 149 (D.D.C.1978).

 Since we have held that plaintiffs are entitled to recover unpaid overtime compensation, they are also entitled to reasonable attorneys' fees and costs. The amount to be allowed as attorneys' fees shall be determined by the trial division on remand, taking into account various pertinent factors. *See Rau v. Darling's Drug Stores, Inc.*, 388 F.Supp. 877 (W.D.Pa.1975).

If plaintiffs do not prevail on the claim for liquidated damages, they will not be entitled to recover any attorneys' fees or costs which are incurred in connection with or are attributable to the trial and resolution of that issue.

## IX. *The Declaratory Judgment Issue*

 Plaintiffs have requested the court to render a declaratory judgment that the government violated the Fair Labor Standards Act by failing to pay plaintiffs the full amount of overtime compensation due them. We agree with defendant that this request must be denied. Except as provided in 26 U.S.C. sec. 7428 with respect to certain tax cases, the Court of Claims has

---

**8.** For cases involving various factors which courts consider in awarding liquidated damages, *see* Annot., 26 A.L.R.2d 607 (1976).

no jurisdiction to render declaratory judgments. *United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969).

### X. *Conclusion*

In accordance with this opinion, plaintiffs are entitled to recover the overtime pay that accrued and was due them from July 24, 1977 to date of judgment. The amount of the recovery is the difference between the amounts they actually received and the amounts they would have been paid had eating and sleeping time been included in their "hours worked." Plaintiffs are also entitled to recover reasonable attorneys' fees and costs. To that extent, plaintiffs' cross-motion for summary judgment is granted, and defendant's motion for summary judgment is denied. The case is remanded to the trial division for a determination of the amount of overtime compensation to be recovered and the amount to be allowed as attorney's fees. Costs shall be taxed by the Clerk in accordance with 28 U.S.C. sections 1920 and 2412.

On the statute of limitations issue, plaintiffs are barred from recovering any overtime compensation due prior to July 24, 1977, and to that extent, defendant's motion for summary judgment is granted and plaintiffs' cross-motion is denied.

Since the court has no jurisdiction to render a declaratory judgment, defendant's motion for summary judgment is granted as to that issue, and plaintiffs' cross-motion is denied.

With respect to the plaintiffs' claims for liquidated damages, both motions for summary judgment are denied, and the issue is remanded to the trial division for determination.