**Dalton HARRISON, et al., and all other persons similarly situated**

v.

**CITY OF CLARKSVILLE, TENNESSEE.**

**No. 3:88–0954.**

United States District Court, M.D. Tennessee, Nashville Division.

Jan. 23, 1990.

John D. Schwalb, Brewer, Krause & Brooks, Nashville, Tenn., for plaintiffs.

Overton Thompson, III, Farris, Warfield & Kanaday, Franklin, Tenn., Frank J. Runyon, Runyon & Runyon, Clarksville, Tenn., and Andree K. Blumstein and Ellen Hobbs Lyle, Nashville, Tenn., for defendant.

## MEMORANDUM

WISEMAN, Chief Judge.

This matter is before the Court on defendant, City of Clarksville's (City), motion for summary judgment against 34 plaintiffs (designated plaintiffs), all of whom were hired by defendant as firefighters after the compensation changes at issue in this suit took effect. On August 21, 1989, 732 F.Supp. 804, this court held that the actions taken by the City were valid under Tennessee law. The Court also held that the implementation of shifts longer than 24 hours was bona fide under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, as amended (FLSA), as applied to the designated plaintiffs. Pending the submission of supplemental affidavits, however, the Court reserved judgment on the question of whether the exclusion of meal and sleep periods from these plaintiffs' compensable time satisfied the requirements of the FLSA.[1]

If certain conditions are met, the regulations implementing 29 U.S.C. § 207(k) permit sleep time and meal time to be excluded from compensable time.[2] At issue is the requirement that the employees expressly or impliedly agree to exclude the time. Because the supplemental affidavits fail to demonstrate that a genuine issue exists as to whether the designated plaintiffs agreed to the exclusion of sleeping and eating periods from compensable time, the Court grants defendant's motion for partial summary judgment.

## FACTS

All of the designated plaintiffs were hired well after the City began to deduct meal and sleep periods from compensable time. Before accepting their offers of employment with the City, each defendant was informed of his annual salary, the length of his shifts, opportunities for incentive pay, and various rules and regulations affecting the job. In his interviews with

---

**1.** The Court noted in its previous memorandum that the affidavits that had been submitted by the designated plaintiffs did not go sufficiently beyond the pleadings to demonstrate that a genuine issue for trial exists. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Two of the designated plaintiffs, Kenneth Burkhart and Darryll Griffey, have not submitted supplemental affidavits, as requested by the Court. Because these plaintiffs have failed to meet the burden established in Rule 56(e), Fed.R.Civ.P., *Anderson,* and *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986), defendant's motion for summary judgment is granted against them. Alternatively, nothing in the record distinguishes these two plaintiffs from the designated plaintiffs against whom summary judgment is also granted, as explained below.

Of the supplemental affidavits submitted, one is signed by a Robert Jennings. Although the affidavit attests that Mr. Jennings was hired by the City after the changes took effect and that Mr. Jennings objected to the deductions in question, Mr. Jennings did not consent to be a plaintiff to this suit as required under 29 U.S.C. § 216(b). Therefore, he is not a party to this suit, and the Court will not consider his claim.

**2.** *See* 29 C.F.R. §§ 553.222, 785.22 (both addressing sleep time), 553.223, 785.19 & 785.22 (addressing meal time) (1988). The requirements of these sections and the historical changes in section designations are set out in some detail in the Court's previous memorandum and will not be repeated here.

each of the designated plaintiffs, however, Chief Keel did not discuss specifically the exclusion of meal and sleep periods from compensable time. Deposition of Gordon Eugene Keel at pp. 71 & 88–89 (filed April 7, 1989). Nor does it appear that any of the designated plaintiffs raised the issue with the chief before accepting employment. On the other hand, the City had begun to exclude these hours well before it hired any of the designated plaintiffs. It is also clear that the practice was widely known and discussed among the firefighters who were on board at the time the designated plaintiffs were hired. Nevertheless, each designated plaintiff contends that he was not actually aware of the exclusion when he accepted the position.

Even if it is true that the designated plaintiffs were not actually aware of the exclusions before accepting their positions, the record demonstrates conclusively that they learned of the policy almost immediately after they began working. According to Chief Keel, the deputy chiefs had the responsibility to inform the employees of the policy when the employees went on to their shifts. *Id.* Although Chief Keel could not attest to whether the deputy chiefs personally fulfilled their responsibility, the designated plaintiffs were informed of the exclusion no later than the time that they received their first time sheets. The time sheets are self-explanatory. They specify time periods set aside for meals and sleep, and illustrate that the number of hours set aside for sleeping and eating during which the workers were not called into action are deducted from compensable hours. All but five of the designated plaintiffs either received and signed the time sheets, or otherwise admit to being informed of the exclusions no later than the conclusion of the first pay period after they began employment.[3]

Only two designated plaintiffs make even a colorable claim that they expressed some objection to the exclusions immediately upon learning of them. Plaintiff Douglas attests that he "objected orally" when his first timesheet was presented to him, and that he has since either signed "no" on his timesheets or refused to sign them at all. Plaintiff Togia attests that upon learning of the exclusion, he told Deputy Chief Stanfield that "it wasn't right to be required to stay" for an entire shift unless he was paid for all of the time. Plaintiff Togia has continued to tell each duty officer who presents him with timesheets that the policy is wrong, but he signs the timesheets because he was told by Deputy Stanfield that signing "didn't mean anything." All of the other designated plaintiffs waited at least one month after learning or receiving notice of the exclusions before expressing any objection.[4] Before

---

3. Designated plaintiff Richard Butts began employment on March 1, 1986. The record does not show that he viewed a time sheet until August 25, 1986. The record contains no copy of a time sheet for plaintiff James Castleberry, but he attests that he learned of the deduction in October, 1987, approximately two months after he was hired. The same is true for plaintiff James Kinder. Plaintiff Alvin Oldham was hired on August 1, 1986, but the earliest time sheet for him appearing in the record was for the period ending April 27, 1987. Plaintiff Samuel Pettus began work on March 1, 1986, but his earliest time sheet is for the period ending July 26, 1986.

Of course, the mere fact that these plaintiffs may not have seen a time sheet until months after they were employed does not establish that they were in fact unaware of the deductions during that period. The record is clear that the deductions were well known among the firefighters and that the deductions were the topic of firehouse "scuttlebutt." *See* Keel Deposition at 52. At least two designated plaintiffs learned of the deductions, even though no time sheet for them appears in the record. Tuatia Togia attests that he learned of the deduction almost immediately after he came on duty on October 15, 1986. The same is true for plaintiff Don Douglas, who came on duty on August 1, 1987. Indeed, claims that any of the plaintiffs were ignorant of the deductions for any extended period after they began their employment are not plausible in light of the record currently before the Court. At the very least, plaintiffs who did not see timesheets detailing the deductions were put on notice that they were not being paid for all of the hours spent at the firehouse when they received their first paycheck that did not include overtime, even though their hours on duty exceeded the FLSA's limits.

4. The designated plaintiffs, the span between the latest they learned of the policy and the earliest they objected, and the form of their objection are as follows: Stanley Arms, 14 months, told deputy chief that the policy

filing this lawsuit, none of the designated plaintiffs registered a formal grievance or took formal steps to request or initiate a change in the policy. Nor did any of the designated plaintiffs quit their jobs or refuse to accept their paychecks.

## ANALYSIS

The issue presented is whether the designated plaintiffs, all of whom were hired after the City began to exclude sleep and meal periods from compensable time, impliedly agreed to the exclusions, as required under 29 U.S.C. § 207(k) and 29 C.F.R. §§ 553.222 & 553.223. To make this determination, the Court must consider the conduct of the parties and all of the surrounding circumstances. *See Skidmore v. Swift & Co.,* 323 U.S. 134, 137, 65 S.Ct. 161, 163, 89 L.Ed. 124 (1944). Where the circumstances and actions of the parties demonstrate that the plaintiffs were aware of a particular matter, their acceptance of and continuance in employment manifests assent on that matter. *See Ariens v. Olin Mathieson Chem. Corp.,* 382 F.2d 192, 197 (6th Cir.1967); *Beaston v. Scotland School for Veterans' Children,* 693 F.Supp. 234, 239–40 (M.D.Pa.1988); *Ashe v. Webb,* 142 Tenn. 436, 217 S.W. 654 (1919).

The record currently before the Court demonstrates that there is a genuine dispute as to whether the designated plaintiffs were actually aware of the exclusion before accepting employment with the City. The exclusion was not discussed in their pre-hire interviews. While this suggests, on the one hand, that the plaintiffs were not made aware of the exclusion, it also suggests that whether the plaintiffs were paid for sleeping and eating was not material to their decision to accept the job. Fur-

"sucked" and refused to sign timesheets; Donald Baker, 14 mos., refused to sign timesheets or signed "under protest"; Brent Bazzell, 24 mos., refused to sign or signed "X" on timesheets; Anthony Burney, 14 mos., wrote "no sign" on timesheets; Randy Byard, 23 mos., refused to sign or signed "under protest" on timesheets; James Cain, 25 mos., told deputy chief that city was "doing us dirty" and refused to sign or signed "under protest" on timesheets; William Castle, 14 mos., told deputy and assistant chiefs that he did not agree with policy and wrote "no" on all timesheets; Lucien Connell, 25 mos., signed "by protest" on timesheets; Robert Forest, 11 mos., signed "no" on and dated timesheets; Dalton Harrison, 6 mos., told duty officer who brought timesheets that he disagreed with policy, and that policy was wrong, and signed timesheets "under protest"; Donnie Haskins, 13 mos., told lieutenants that he should get paid for meal and sleep time and filed this lawsuit; Wendell Hemmingsen, Jr., 13 mos., signed "no" on his timesheets; Norris Jones, 24 mos., asked lieutenant why he was not getting paid for the time periods and signed "under protest" on timesheets; David Kirkland, 24 mos., Andy Keatts, 9 mos., told officers that he did not agree with the policy and signed "no" on the timesheets; James Kinder, 1 month, refused to sign or signed "no" on timesheets; David Kirkland, 24 mos., signed "no" on timesheet; Charles Knickerbocker, 14 mos., refused to sign or signed "no" or "under protest" on timesheets; John Myers, 14 mos., told lieutenant that policy wasn't right and refused to sign timesheets; Maurice Rives, 14 mos., Alvin Oldham, 13 mos., asked officers about policy and signed "under protest" on timesheets; Allen Rippy, 2 mos., told lieutenant that policy was wrong and signed "no" on timesheets; Maurice Rives, 14 mos., refused to sign or signed "under protest" on timesheets; Anthony Rogers, 6 mos., told lieutenant and deputy chief that policy was not right and signed "X" on timesheets, Richard Rye, 14 mos., told lieutenant that he disagreed with policy and refused to sign or signed "no" on timesheets; Troy Suiter, 11 mos., signed "no" on timesheets; Walter Thomas, Sr., 14 mos., signed "X" on timesheets; Danny Turner, 11 mos., told lieutenant that he had not agreed to the deductions and refused to sign timesheets; Raimon Williams, Jr., 12 mos., signed "no" on timesheets.

Plaintiff Butts attests that immediately upon learning of the exclusions, he told Assistant Chief Vernie Hill and Lieutenant Dale Joiner that the policy "was not right" and stopped signing his time sheets. But plaintiff Butts was put on notice of the exclusion when he received his first paycheck that did not include overtime pay. Therefore, even accepting his attestations, he waited at least three months before expressing any objection to the exclusion. Plaintiff Castleberry attests that he "asked (Deputy) Chief (Carl) Perry about the (exclusions)" and upon receiving an explanation told Deputy Chief Perry that he objected to the exclusions unless he could leave the station and that the policy "wasn't right." Plaintiff Castleberry also attests that he refused to sign or signed "no" on his timesheets. Mr. Castleberry waited at least one month after receiving notice of the exclusion before objecting. Plaintiff Pettus attests that he told Deputy Chief Perry that the policy was wrong. Pettus also quit signing his timesheets several months after expressing his objection. Mr. Pettus waited at least two months, however, before expressing any objection at all.

ther, given the fact that the practice was already in place and was the topic of discussion among the firefighters, it is somewhat incredible that none of the designated plaintiffs knew of the practice before accepting the position. But although this particular factual dispute is properly resolved at trial, rather than through summary judgment stage, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), it does not preclude summary judgment.

Under the FLSA, an employee's continued employment and acceptance of pay is evidence of the employee's implied agreement to certain practices, terms and conditions of employment. *E.g., Williams v. Jacksonville Terminal Co.*, 315 U.S. 386, 398, 62 S.Ct. 659, 666, 86 L.Ed. 914 (1942). Traditionally, courts have inferred from continued employment and acceptance of pay that an agreement existed on a particular matter, even if the employee voiced an objection to the matter. *E.g., id.; Shepler v. Crucible Fuel Co.*, 140 F.2d 371, 374 (3d Cir.1944). More recently, however, in circumstances where changes in compensation were implemented after firefighters were hired, courts have been reluctant to apply the traditional rule to determine whether the employees impliedly agreed to the change as contemplated under 29 C.F.R. §§ 553.222 & 553.223.

In *Beebe v. United States*, 640 F.2d 1283, 226 Ct.Cl. 308 (Ct.Cl.1981), the plaintiff employees protested the exclusion as soon as they became aware of it, and, through their union, entered into ongoing negotiations over the matter with their employer, but continued to accept their paychecks. When negotiations broke down, and the parties withdrew their proposals, the employees filed suit seeking to obtain the relief which negotiation failed to produce. Based upon these circumstances, the court held that the employees did not agree to the exclusion and awarded them overtime compensation under the FLSA. *Id.* at 1291 & 1295. In *Jacksonville Prof. Fire Fighters Ass'n Local 2961 v. City of Jacksonville*, 685 F.Supp. 513 (E.D.N.C.1987), the court considered a similar situation. Within days after the policy excluding sleeping and eating periods was posted, all but four employees signed and filed with defendant's manager a petition objecting to the policy. *Id.* at 519. The court held that the filing of the petition precluded summary judgment in favor of defendants on the issue of whether there was an implied agreement, except as to the four plaintiffs who did not sign the petition. *Id.* at 520 & n. 6. Likewise, in *International Ass'n of Firefighters, Local 349 v. City of Rome*, 682 F.Supp. 522 (N.D.Ga.1988), the court held that a continuation continuing to work and accept pay may be evidence of an implied agreement, but is not conclusive. *Id.* at 529. Explicitly following *Beebe* and *Jacksonville*, the court denied the defendant's motion for summary judgment, holding that clear contemporaneous dissent to the exclusion negated any inference of agreement by the dissenters. *Id.* at 529–30. Finally, in *Brewer v. City of Waukesha*, 691 F.Supp. 160 (E.D.Wis.1988), through the state's impasse procedures for resolving labor disputes, an arbitrator adopted the city's proposal to exclude sleep and meal time. The union and individual firefighters objected to the proposal as soon as it was submitted to the arbitrator. The defendant argued that the firefighters agreed to the exclusion when the union failed to appeal the arbitrator's decision. The court held that the individual firefighters possessed the FLSA rights at issue and that in light of their express objections, there was no evidence that they agreed to the exclusion or empowered the union to agree to it on their behalf. *Id.* at 163. Under these cases, employees do not necessarily have to quit their jobs or refuse their paychecks to object effectively to the employer's exclusion of sleep and meal periods for the purposes of overtime. At the very least, to negate the inference of agreement to the exclusion, the employee must expressly object within a short period after learning of the employer's intent to exclude the time.

Assuming *arguendo* that this rule applies to the designated plaintiffs, defendant is nevertheless entitled to summary judgment against all but two of the designated

plaintiffs.[5] All but two designated plaintiffs waited anywhere from one to two months to two years after learning or having notice of the exclusion before expressing their objections in any form. Meantime, they continued to work and to accept their paychecks. Because there is no showing that these plaintiffs made a timely objection to the exclusions, the circumstances demonstrate that they agreed impliedly to exclude the time. Accordingly, defendant is entitled to summary judgment against these designated plaintiffs. *Cf. Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).[6]

Defendant is also entitled to summary judgment against the remaining designated plaintiffs. The *Beebe* rule emerged in contexts where employers sought to alter the employment agreements under which the plaintiffs were hired. As a practical matter, to apply the traditional rule in this context would force employees to put years of experience and seniority, and conceivably their livelihood, on the line merely to retain the benefits of the bargain to which they originally agreed. Courts applying the *Beebe* rule have recognized this, and expressed concern that requiring employees to quit their jobs or to refuse their paychecks would enable employers to unilaterally change a longstanding employment agreement even though the FLSA requires mutuality. *See Beebe*, 640 F.2d at 1291; *Jacksonville Fire Fighters*, 685 F.Supp. at 520; *Rome Firefighters*, 682 F.Supp. at 529. The same concerns do not apply to employees who accept a job where a particular compensation system is already in effect. In the absence of subterfuge or misrepresentation on the part of the employer, employees cannot claim that the employer has altered the terms of their employment agreement. New hires have an opportunity before accepting employment to discover the terms of employment that are material to their decisions whether to take their jobs. Failure to discuss a particular term before accepting a position indicates either that the term was not material to the decision to accept the job, or that the term, though material, was simply overlooked. Where the parties discover the oversight shortly after hire, and the employee decides to continue in his employment and to accept his paycheck, the employee's actions manifest his acceptance of the originally overlooked term, even though he expresses his objection to the term. *Cf. Ariens*, 382 F.2d at 194 & 197; *Rousseau v. Teledyne Movible Offshore, Inc.*, 619 F.Supp. 1513, 1519 (N.D.La.1985), *aff'd in part, rev'd in part*, 805 F.2d 1245 (5th Cir.1986) (employee's continued employment manifested agreement to employment arrangement that had always existed between the parties, in spite of employees' objections); *Standard Oil v. Entrikin*, 4 Tenn.App. 57 (1926) (continuance in employment manifested acceptance of term that was not explicitly described to him before accepting promotion). In other words, the employee has the same option before him when the oversight is discovered as he would have had were the matter discussed before he was hired: accept the disputed term by accepting employment, or look for employment elsewhere.

Applying this rule, the Court holds that defendant is entitled to summary judgment against all of the designated plaintiffs. Nothing in record even remotely suggests subterfuge or misrepresentation by the defendant as to these plaintiffs. As noted above, most of the designated plaintiffs

---

**5.** The Court is not holding that meeting these minimal requirements will necessarily defeat a claim that employees impliedly agreed to exclude periods from compensable time. Nor, as will be explained below, is the Court holding that *Beebe* and its progeny apply equally to persons hired before and persons hired after their employer implemented the exclusions. Nor is the Court holding that *Beebe* and its progeny even apply to persons who were already employees at the time of the changes. On this matter, the Court expresses no opinion at the current time. Rather, for the purposes of assessing whether the designated plaintiffs may withstand the motion for summary judgment, the Court is giving the plaintiffs the benefit of the most favorable rule to be gleaned from FLSA jurisprudence.

**6.** The designated plaintiffs against whom summary judgment is awarded on these grounds are listed *supra* at note 4.

waited at least a month before objecting in any fashion. Of the two who make a colorable claim of raising an immediate objection, their affidavits demonstrate only that they would have preferred a different policy, but that they were willing to accept the arrangement along with the benefits of their employment with the City. In short, their actions support only the inference that they agreed to exclude sleeping and eating periods from compensable time. Thus, because the designated plaintiffs agreed to the exclusion and all other requirements of FLSA have been met, the City properly excluded sleeping and eating periods from the designated plaintiffs' compensable time.

## CONCLUSION

For the reasons stated in the Court's memorandum of August 21, 1989, and for the reasons stated above, defendant's motion for summary judgment against the designated plaintiffs is granted.