JACKSONVILLE PROFESSIONAL FIRE FIGHTERS ASSOCIATION LOCAL 2961, IAFF, et al., Plaintiffs,

v.

The CITY OF JACKSONVILLE, Defendant.

No. 86–58–CIV–4.

United States District Court, E.D. North Carolina, New Bern Division.

May 28, 1987.

M. Travis Payne, Steven R. Edelstein, Edelstein & Payne, Raleigh, N.C., for plaintiffs.

Marshall F. Dotson, Jr., Warlick, Milsted, Dotson & Carter, Jacksonville, N.C., for defendant.

## MEMORANDUM OF DECISION

DUPREE, District Judge.

Plaintiffs brought this action on June 12, 1986 alleging that defendant violated the Fair Labor Standards Act of 1938 (hereinafter referred to as the FLSA), 29 U.S.C. § 201, *et seq.*, by deducting sleep time from hours worked without a prior agreement with plaintiffs as required by 29 C.F.R. § 553.15 (1986) and by adopting a policy of compensatory time off ("comp time") in lieu of overtime pay without an agreement with plaintiffs' representative, Jacksonville Professional Fire Fighters Association, Local 2961 (hereinafter referred to as JPFFA) as provided in 29 U.S.C. § 207(*o*). As relief plaintiffs seek a declaratory judgment, an injunction, compensatory damages for unpaid overtime, and liquidated damages pursuant to 29 U.S.C. § 216(b). The action is presently before the court on the parties' cross-motions for summary judgment.

Both parties have responded by memoranda and supporting documentation, and they agree that the case may be decided by the court on the basis of the undisputed facts in the record.

## FACTS

Based on the record the following facts appear not to be in dispute. At the time of the action complained of by plaintiffs, the Jacksonville City Fire Department employed a total of fifty-one employees, forty-six of whom were classified as non-exempt under the FLSA.[1] A breakdown of non-exempt employees in the fire department was as follows: eight company officers, eight drivers/operators, nine assistant drivers, and twenty-one fire fighters.

Since 1974 the Jacksonville Fire Department has operated under a fourteen-day work schedule consisting of twenty-four hours on duty followed by forty-eight hours off duty. Under this two-week work schedule, the firefighters worked an average of 112 hours. In April 1985, defendant claims it came under the Fair Labor Standards Act. As a result, the work cycle for firefighters was changed by defendant from fourteen days to a twenty-eight-day work period. Also, on September 6, 1985 firefighters were notified by defendant that the previously required twenty-four-hour shift would be increased by fifteen minutes, that eight hours of sleep time[2] would be deducted from each twenty-four-hour and fifteen-minute regular shift for purposes of computing overtime, and that they could work up to 212 hours before overtime pay would be due.

Up until this time sleep time had never been deducted from hours worked by firefighters. Because these deductions were applicable only for purposes of overtime computations plaintiffs continued to be paid for hours worked including sleep time.[3] However, plaintiffs did not receive

---

1. Eight hours in sleep time was deductible only if five hours of rest was received during the designated sleep time of 11:00 p.m. through 7:00 a.m.

2. Only twenty-seven of these forty-six non-exempt employees have filed this suit against defendant.

3. Under the new twenty-eight-day cycle defendant's records indicate that an average of 224

any increase in pay for the fifteen minutes added to their twenty-four-hour shift.

The above-mentioned changes made by defendant were taken in order to take advantage of 29 U.S.C. § 207(k), the partial overtime exemption provision of the FLSA, which permits sleep time deductions when computing compensable hours for overtime purposes. This action was taken in accordance with instructions obtained by defendant at an FLSA seminar sponsored by the League of Cities on August 23, 1985. The changes were made without any prior vote or agreement with the firefighters.

On September 11, 1986, Fire Chief Barger wrote to Alfred Perry, Assistant Regional Administrator for the Wage and Hour Division in Atlanta for written confirmation that such action without an employee vote was proper. Written confirmation was received October 7, 1985. However, during the time these changes came into effect, on or before September 10, 1985, thirty-three of the forty-six non-exempt firefighters signed and sent to the city manager a petition expressly objecting to the sleep time deduction and fifteen-minute addition to their shift. In spite of the petition defendant did not enter into any express agreement with the firefighters regarding the deductions.

On March 17, 1986 defendant received a letter signed by David Johnson, President of Local No. 2961 of the International Association of Fire Fighters and another petition signed by thirty-two of the fifty-one firefighters notifying the city that they had selected Local No. 2961 as their representative for the purpose of entering into an agreement regarding the use of comp time in lieu of overtime pay as provided in 29 U.S.C. § 207(o), the subsection added to the FLSA by way of the 1985 amendments, to be effective as of April 15, 1986. All the firefighters who executed the petition were employed by the city prior to April 15, 1986.

In spite of the letter and petition the defendant did not contact the firefighters or their representative regarding the use of compensatory time. However on April 11, 1986 a draft copy of a revised comp time policy was distributed to department heads and posted on all employee bulletin boards. Not only did this policy provide for the utilization of compensatory time off for overtime worked instead of any monetary payment, it also granted authority to the city manager to determine, at his discretion, whether firefighters were actually paid for overtime or given comp time off. Although the employees were instructed to comment on the proposed policy no response was received from the fire fighters individually.

On April 23, 1986 defendant adopted this proposed policy. Shortly thereafter the city manager received a letter from plaintiffs' counsel objecting to the use of comp time and reaffirming plaintiffs' objection to the continued deduction of sleep time from hours worked. Plaintiffs have never entered into any agreement providing for the use of comp time in lieu of pay for the overtime they have worked.

At all times relevant to this action plaintiffs have received pay based on defendant's records showing an "average" of 224 hours worked in the twenty-eight-day work cycle. At least since March of 1985 and continuing up through the present, the pay stubs received by firefighters reflect payment for 112 hours every two weeks. However, some of defendant's records indicate that the actual number of hours worked by some firefighters has varied between 218 and 234 hours. When sleep time is deducted, it is taken against this 224-hour "average" rather than against the actual number of hours worked. Plaintiffs are presently receiving neither overtime pay nor comp time for any hours they have worked during regularly scheduled shifts.

## DISCUSSION

Two substantive issues are presented by the parties' motions for summary judgment

hours are worked by the firefighters and that slightly more than seventy-two of the 224 hours

constitute sleep time deductions.

both of which pertain to overtime compensation. The first issue raised is whether defendant violated the FLSA, specifically 29 C.F.R. § 553.15(b), when it implemented a sleep time deduction policy for computing overtime without first obtaining plaintiffs' consent by way of agreement. The second issue is whether defendant's adoption of a compensatory time off policy in lieu of monetary pay for overtime without first obtaining an agreement with plaintiffs' representative, JPFFA, violated 29 U.S.C. § 207(*o*). However, before addressing these issues, a review of the legislative history surrounding the FLSA is warranted, particularly as it applies to public employees.

1. *Legislative Background of the FLSA*

Using its powers under the Commerce Clause, Article I, Section 8, Clause 3, Congress enacted in 1938 the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, to establish labor standards in order to maintain the "minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202. Two such standards require employers to pay employees a certain minimum hourly wage, 29 U.S.C. § 206, and a higher rate at one and one-half times the regular work pay for hours worked in excess of forty hours per week, 29 U.S.C. § 207.

Initially, the FLSA was not made applicable to "the United States or any state or political subdivision of a state ..." acting as employers and therefore public employees were not protected. 29 U.S.C. § 203(d) (1940). On a piecemeal basis however, coverage was extended to employees of certain publicly-operated schools and hospitals pursuant to the FLSA's 1966 amendments, to employees of public preschools under its 1972 amendments and finally to all remaining state and local governments by the 1974 amendments, 29 U.S.C. § 203(d), effective January 1, 1975.

With the passage of the 1974 amendments public agencies became subject to the overtime and minimum wage provisions of the FLSA. However, with respect to overtime, a new provision was created by the amendments, 29 U.S.C. § 207(k), applicable only to public employers of police and fire protection personnel. In accordance with this provision, where five or more firefighters were employed, the public agency could elect to take advantage of subsection (k) for a partial overtime exemption. In conjunction with this statutory provision and for purposes of its interpretation, regulations were promulgated under 29 C.F.R. § 553.1, *et seq.*, and made effective January 1, 1975. One such regulation, 29 C.F.R. § 553.15, deals with the sleep time deduction.

The 1974 amendments to the FLSA came under attack in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), *overruled, Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). There the Supreme Court found the amendments unconstitutional as they pertain to certain public agency employers because Congress was without power to "force directly upon the States its choices as to how essential decisions regarding the conduct of integral governmental functions are to be made." *Id.* 426 U.S. at 855, 96 S.Ct. at 2476. As a result the court held that the FLSA could only be applied to employees of public agencies engaged in "non-traditional governmental activities" and did not include areas of traditional governmental functions such as fire prevention, police protection, public health and parks and recreation. *Id.* at 851, 96 S.Ct. at 2474. Thus, fire employees were once again outside the protections of the FLSA.

In February, 1985 public agencies involved in traditional governmental functions were again brought within the FLSA with the Supreme Court's decision in *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), overruling *Usery*. The court held that its decision in *Usery* calling for judicial appraisal of whether a particular governmental function was "traditional" or not to determine whether a state was immune from federal regulation

was unsound in principle and unworkable in practice.

In response to *Garcia* the FLSA was amended in 1985 to take effect on April 16, 1986. These amendments authorized the promulgation of new regulations and made certain additions to the Act applicable to public employers. One such addition was Section 207(*o*) enabling public employers to implement a compensatory time off policy in lieu of monetary payments for overtime hours worked. However, with respect to the pre-existing regulatory provisions pertaining to sleep time deductions, the new regulations made no changes as to substance. These regulations were published in final form in 52 Fed.Reg. 2012 (1987), to be effective February 17, 1987.

### 2. *Sleep Time Deductions*

The first issue raised by the plaintiffs in their motion requires an interpretation of 29 C.F.R. § 553.15(b),[4] the regulation dealing with the sleeptime deduction for firefighters promulgated in accordance with Section 207(k), the subsection providing public employers with a partial overtime exemption. Subsection (k) reads in part as follows:

> (k) **Employment by public agency engaged in fire protection or law enforcement activities.**
>
> No public agency shall be deemed to have violated subsection (a) [overtime provision] of this section with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities ... if—
>
> (1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975[5] ...

compensation at a rate not less than one and one-half times the regular rate at which he is employed.

29 C.F.R. § 553.15 provides the following:

> § 553.15 **Sleeping and meal time as compensable hours of work.**
>
> (a) Where the employer has elected to use the section 7(k) exemption, sleep and meal time cannot be excluded from compensable hours of work where (1) the employee is on duty for less than 24 hours, which is the general rule applicable to all employees (29 CFR 785.21) and (2) where the employee is on duty for exactly 24 hours, which represents a departure from 29 CFR 785.21.
>
> (b) Sleep and meal time may, however, be excluded in the case of fire protection or law enforcement employees who are on duty for more than 24 hours, but only if there is an express or implied agreement between the employer and the employee to exclude such time. In the absence of any such agreement, sleep and meal time will constitute hours of work. If, on the other hand, the agreement provides for the exclusion of sleep time the amount of such time shall, in no event, exceed 8 hours, in a 24–hour period....

In the present action on September 9, 1985 defendant adopted the following policy pertaining to sleep time deductions and made applicable to Jacksonville firefighters:

> As you have previously been informed, the department plans to use the Section 207K, Sleep Time Provision, of the Fair Labor Standards Act for all employees working shift duties with a 28–day work cycle. Employees working shifts may work up to 212 hours before overtime pay is due. The 207K regulation allows for sleep time to be excluded for [sic] compensatory time for fire personnel on duty for more than 24 hours.
>
> Effective September 6, 1985, a daily work period of 24 hours and 15 minutes will be established for all shifts. Sleep time shall be designated from 11:00 P.M.

---

**4.** Under the newly promulgated regulations this provision can be found at Section 553.222(b).

**5.** This figure was set by the Secretary at 212 hours. *See* 48 Fed.Reg. 40,519.

until 7:00 A.M. and up to 8 hours of sleep time shall be excluded from the calculation of total hours within a 24 hour shift, providing that 5 hours of rest is received. This policy is hereby established as a condition of employment for fire personnel and its acceptance on your part is implied by your continued employment. Sleep time only applies to regular duty hours and not to extended work time or called-in work. Called-in work for shift personnel covered by Fair Labor Standards Act will be paid at one and one-half times the regular hourly shift. Extended time beyond the normal shift period should be given as compensatory time off, unless it exceeds four hours during a particular incidence.

In their motion for summary judgment plaintiffs contend that defendant's policy permitting the deduction of sleep time from hours worked is in violation of 29 C.F.R. § 553.15(b) because no express or implied agreement was entered between the parties allowing for such a deduction. Plaintiffs rely on the plain language of the regulation which permits sleep time to be excluded "only if there is an express or implied agreement between the employer and the employee to exclude such time." Applying this interpretation plaintiffs argue that the facts clearly show that no express agreement was entered between themselves and defendant and that their petition objecting to this deduction policy submitted to the city manager on September 10, 1985, only four days after the policy's adoption, is evidence that no agreement existed by implication.

Additionally, plaintiffs cite *Beebe v. United States*, 226 Ct.Cl. 308, 640 F.2d 1283 (1981) as authority for their argument. There, federal firefighters brought an action against the government to recover overtime pay allegedly due them for meal time and sleep time during regularly scheduled tours of duty. At the administrative level, this claim was denied by the Civil Service Commission on grounds that the firefighters had "implicitly agreed" to exclude sleep and meal time in the computation of their overtime pay because of their continued acceptance of pay checks which excluded this time. *Id.* 640 F.2d at 1288. On de novo review however the Court of Claims found that no agreement could be implied where the facts showed plaintiffs' continuous protestations to the sleep and meal time deductions and failed to reveal any meeting of the minds and mutual consent. *Id.* at 1291.

Defendant responds to plaintiffs' argument in several ways. First, defendant asserts that no violation occurred because its sleep time policy pre-existed by seven months the date upon which the regulations became effective. Second, defendant argues that it is prevented from entering any agreement with plaintiffs' union by state statute, N.C.G.S. § 95–98. Third, defendant submits that its actions regarding sleep time deduction were taken in compliance with an opinion by the Wage and Hour Deputy Administrator Perry. Finally, defendant appears to argue that an agreement can be implied in light of facts showing that the firefighters were asked but failed to comment on the policy and that the policy was made a "condition of employment" and the firefighters continued to work.

█ Plaintiffs' motion for summary judgment as to defendant's violation of the sleep time deduction provision of the FLSA will be granted. Based on the plain language of the regulation an "express or implied agreement" calling for the exclusion of sleep time is required before such time is deductible from hours worked for purposes of computing overtime. The provision expressly provides that "[i]n the absence of any such agreement, sleep ... time will constitute hours of work." 29 C.F.R. § 553.15(b). Nothing in the record indicates that an express agreement was entered between the parties. Although defendant argues that an agreement can be implied because of plaintiff's "continued employment" or their failure to file "comments" at the time the policy was adopted, the court disagrees. It is undisputed that plaintiffs filed a petition with defendant's manager objecting to defendant's new sleep time policy within days of its posting.

In light of *Beebe, supra,* this action is sufficient to negate any implication that plaintiffs consented to the policy simply because they continued to work.[6] To uphold defendant's argument would mean placing plaintiffs in a "Catch–22," no-win situation. Plaintiffs would be forced to agree in order to keep their jobs or quit to show their objection. Furthermore, these facts are hardly indicative of a meeting of the minds or mutual consent necessary for finding an implied contract.

In support of its argument that no prior consent or agreement with the firefighters was necessary before implementing its sleep time policy, defendant also points to an opinion letter written by the Deputy Administrator of the Wage and Hour Division in response to a letter by defendant's fire chief. Chief Barger's letter reads in part:

This letter is in reference to the telephone conversation I had with you Friday, September 6, 1985. In our telephone conversation, I was inquiring about the statements that were made at the League of Cities Seminar in Atlanta, on August 23, 1985. The statements that were made concerned the implementation of the 207–k, partial exceptions that dealt with excluding sleep time for firefighters.

As I understand it, should the cities decide to use the 207–k, all that is needed is to establish sleep time as a job condition, and no vote is required from the membership as long as there is no binding agreement or contract stating otherwise....

The pertinent portion of the Deputy Administrator's response states:

Thank you for your letter dated September 11, 1985. Your letter requests confirmation of understandings reached from the recent seminar (August 23) in Atlanta and a subsequent (September 6) telephone discussion you and I had. Spe-

cifically you desire confirmation regarding:

(1) Where sleep time is to be deducted for an employee for whom the Section 7(k) exemption is claimed the employee need only be "advised" of this hours deduction—no "vote" of employees is required....

Your understanding of my comments on these two matters is correct. Regarding item (1) we do suggest this policy be put in writing and be provided every employee. Some cities, etc., have had the employee acknowledge receipt of said policy and the employee's understanding of the policy....

Although defendant's reliance on an opinion letter out of the Wage and Hour Division is understandable, defendant is nevertheless in violation of the sleep time provisions. Nowhere in the Deputy Administrator's response is there any regulatory provision cited as support for the opinion and the court has been unable after extensive review of the applicable provisions to locate any of the language used by the administrator in stating his opinion. The court has reviewed the provisions at great length and their intent appears unambiguous. Defendant has presented no case law to support his opinion letter to alter the court's opinion that the plain language of the regulation is controlling. Thus the court considers the Wage and Hour opinion letter to be of little or no weight as to the proper interpretation of the sleep time deduction provisions of the FLSA.

Finally, with respect to the sleep time deduction provisions defendant argues that it is prevented from entering into any agreement with plaintiffs by North Carolina law, N.C.G.S. § 95–98. This argument is also relied on by defendant with reference to the comp time policy question, the second issue in the case. This argument too, is without merit. However, because the argument is more appropriately for discussion in light of the second issue,

---

6. Although not raised by defendant, the court notes that four plaintiffs, Fountain D. Cavanaugh, Jr., Thomas J. Seybuck, Eric A. Davis and Forest Thomas, did not sign the petition objecting to defendant's sleep time policy. That being so, their consent to such a policy can be implied.

the court will reserve further analysis until that time.

Based on the foregoing, defendant's deduction of sleep time hours for purposes of determining whether overtime compensation is due where no prior agreement with plaintiffs existed, is in violation of 29 C.F.R. § 553.15. Accordingly, plaintiffs' motion for summary judgment as to this issue is granted and defendant's motion is denied.

### 3. *Compensatory Time Off Provisions*

In their cross-motions for summary judgment the parties raise a second issue as to the interpretation of 29 U.S.C. § 207(*o*), the subsection added by the 1985 amendments which provides for the use of compensatory time off in lieu of overtime pay. Under the FLSA monetary overtime compensation is required under Section 207(a) where the hours worked during one week exceed forty hours. However subsection (*o*) provides "an element of flexibility to state and local government employers and an element of choice to their employees or representatives ... regarding compensation for statutory overtime hours" by enabling the public employer to give comp time off rather than monetary overtime pay at a rate of not less than one and one-half hours for each hour of employment for which overtime would be required. 29 C.F.R. § 553.20. Subsection (*o*) reads in part as follows:

(*o*) **Compensatory time**

(1) Employees of a public agency which is a State, a political subdivision of a State, or an interstate governmental agency may receive, in accordance with this subsection and in lieu of overtime compensation, compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section.

(2) A public agency may provide compensatory time under paragraph (1) only—

(A) pursuant to—

(i) applicable provisions of a collective bargaining agreement, memorandum of understanding, or any other agreement between the public agency and representatives of such employees; or

(ii) in the case of employees not covered by subclause (i), an agreement or understanding arrived at between the employer and employee before the performance of the work; and

(B) if the employee has not accrued compensatory time in excess of the limit applicable to the employee prescribed by paragraph (3).

In the case of employees described in clause (A)(ii) hired prior to April 15, 1986, the regular practice in effect on April 15, 1986, with respect to compensatory time off for such employees in lieu of the receipt of overtime compensation, shall constitute an agreement or understanding under such clause (A)(ii). Except as provided in the previous sentence, the provision of compensatory time off to such employees for hours worked after April 14, 1986, shall be in accordance with this subsection.

As to this second issue defendant makes two arguments. First, defendant contends that plaintiffs did not "effectually" select a "recognized representative" at the time of the city's revision of its existing comp time policy so as to require an agreement under 29 U.S.C. § 207(*o*)(2)(A)(i) because plaintiffs' appointment of JPFFA as their representative for purposes of bargaining with defendant is in violation of North Carolina law, N.C.G.S. § 95–98. This state statute provides that:

Any agreement, or contract, between the governing authority of any city ... and any labor union, trade union, or labor organization, as bargaining agent for any public employees of such city ... is hereby declared to be against the public policy of the State, illegal, unlawful, void and of no effect.

In support thereof defendant points to the comment found at 52 Fed.Reg. 2014 (1987) wherein the Department of Labor expressed "its intention" that the question of whether employees have a representative for purposes of subsection (*o*) shall be determined in accordance with state or lo-

cal law. Second, defendant contends that the facts fall within Section 207(*o* )(2)(A)(ii) and that no agreement is required because: (1) plaintiffs have no representative, (2) they were hired prior to April 15, 1986, and (3) the city has had a policy in effect providing for comp time off since 1978.

In response to defendant's argument plaintiffs assert that the regulations require that an agreement be entered between the parties before the implementation of a comp time off policy because plaintiffs, in their March petition, had designated a representative, JPFFA, to act for them in negotiations with defendant as to the comp time provisions. Plaintiffs argue that their representative need not be a recognized, formal collective bargaining agent in light of the regulatory language interpreting subsection (*o* ) which states that "the representative need not be a formal or recognized bargaining agent as long as the representative is designated by the employees." 29 C.F.R. § 553.23(b)(1). In this regard, plaintiffs also rely on a letter dated September 26, 1986 to the Department of Labor from the principal drafters of the 1985 amendments which states:

Section 2 of the 1985 Amendments provides that state and local governments may use compensatory time in lieu of cash payment for overtime only after certain conditions are met. Among those conditions is the agreement of representatives of the employees involved where such employees have designated a representative. (See FLSA Section 7(*o*)(2)(A)(i), as added by Section 2(a) of the 1985 Amendments.) We were careful in developing the amendment to be clear that the *representative need not be* a formally recognized collective bargaining representative and that *recognition by the employer was not required*.... (Emphasis added.)

It is the employees' designation, and not the employer's recognition or attitude toward that representative, that is vital. FLSA Section 7(*o*)(2)(A)(i) was specifically drafted to avoid any requirement of formal recognition. During the consideration of the legislation, specific references were made to a number of states

where NLRA collective bargaining style recognition does not exist; but where large numbers of fire, police, and general public employees belong to labor organizations. We intended the FLSA requirement of an agreement on compensatory time to apply in those situations.

Finally, plaintiffs assert that defendant cannot rely on N.C.G.S. § 95–98 to prevent the proper functioning of this regulatory scheme because of the doctrine of preemption. Plaintiffs contend that because this state law conflicts with a federal statute which has been found to be valid as against the states and their subdivisions in the Supreme Court's decision in *Garcia, supra,* it is preempted and can't preclude the agreement required by 29 U.S.C. § 207(*o* ). Although plaintiffs' argument on preemption is not without merit, the court chooses to place decision on the other grounds discussed herein. As we have seen, recognition by the employer of the representative chosen by the employees is not required.

■ In light of the regulatory provisions interpreting subsection (*o* ) the court agrees with plaintiffs that an agreement is required in order for defendant to take advantage of FLSA's compensatory time off feature as opposed to making monetary overtime payments. 29 C.F.R. § 553, *et seq.,* provides rules for interpreting subsection (*o* ). The rules outline conditions which must be met in order for an employer to implement this comp time off feature. Essentially, the regulations deal with two situations: (1) where employees have designated a representative to negotiate for them, or (2) where employees have no representative.

■ Under 29 C.F.R. § 553.23(a)(1) where employees have selected a representative, an agreement is required between the employer and employees' representative before work is actually performed. This agreement may be by collective bargaining agreement, memorandum of understanding, or any other agreement. *Id.* With respect to the employees' representative, he need not be a formal or recognized bargaining agent as long as the representa-

tive is designated by the employees. 29 C.F.R. § 553.23(b).

Where employees have not designated a representative the comp time feature is available if an agreement has been reached between the employer and employees before the work is performed. 29 C.F.R. § 553.23(a)(1). This agreement need not be in writing although some record of its existence must be maintained. 29 C.F.R. § 553.23(c)(1). In this situation, an agreement will be presumed where there is evidence of notice to the employees regarding the policy and the employees have not expressed to the employer any "unwillingness" to accept the policy. *Id.* Also, where employees have no representative and where they were hired prior to April 15, 1986, if the employer has had in effect since this date a regular practice of granting comp time off in lieu of overtime pay, no agreement is required. 29 C.F.R. § 553.23(a)(1). Because of this pre-existing practice the employer is "deemed" to have reached an agreement or understanding with his employees. 29 C.F.R. § 553.23(c)(2). If this practice is not in conformity with the Act however, it must be modified. *Id.*

In this instance the record is clear that in March 1986, before the 1985 amendments became effective, certain firefighters selected by way of petition a representative, JPFFA, to act on their behalf with respect to negotiations regarding a comp time off policy. At this time notice of and the purpose for this representation was made known to the city by letter to its manager, Mr. Caldwell. Based on these facts and the foregoing regulatory language, an agreement with plaintiffs was necessary before defendant could take advantage of the comp time provisions of the FLSA.

As a final argument defendant asserts that its pre-existing comp time policy in effect since 1978 constitutes an implied agreement with plaintiffs under the regulations. Such an argument ignores the regulatory language that this prior practice exception applies only in situations where no employees' representative is involved. *See* 29 C.F.R. § 553.23(c)(2). The limited appli-

cation of this prior practice exception is confirmed in the previously referred to letter by the drafters of the 1985 amendments and the House and Senate Reports dealing with these provisions.

Inasmuch as no agreement has been entered between the parties, defendant has not exercised the option created by 29 U.S.C. § 207(*o*). Thus defendant cannot substitute compensatory time off for monetary overtime pay regarding overtime hours worked by plaintiffs. Accordingly, plaintiffs' motion for summary judgment as to this issue is granted and defendant's motion for summary judgment is denied.

### 4. *Injunctive Relief and Damages*
#### a. *Injunctive Relief*

Plaintiffs seek the following injunctive relief: (1) to prohibit defendant from any future deductions of sleep time until such time as the parties may enter into an agreement allowing for such deduction in accordance with 29 C.F.R. § 553.15, and (2) to prohibit defendant from utilizing compensatory time in lieu of pay for overtime until such time as the parties may enter into an agreement allowing for said use with JPFFA pursuant to 29 U.S.C. § 207(*o*)(2)(A)(i). Inasmuch as the court has granted plaintiffs' motion for summary judgment on both these issues, injunctive relief is appropriate and will be granted.

#### b. *Damages*

Under the FLSA, firefighters are entitled to overtime compensation for hours worked which exceed 212 hours in a twenty-eight-day work cycle. 29 U.S.C. § 207(k)(1)(B). In accordance with this order defendant must compute any overtime without deducting sleep time hours and must compensate for any overtime at a monetary rate of one and one-half times the regular pay rate. On the issue of damages plaintiffs contend that they are entitled to this overtime compensation for any hours worked in excess of FLSA's 212 hours since April 15, 1986 and for the period between June 12, 1984 through November 13, 1985.

First, plaintiffs contend that they are entitled to damages since April 15, 1986 as

provided by the 1985 amendments, that the period between November 13, 1985 and April 14, 1986 is exempted by the statute thus the city bears no liability, and that overtime compensation is due for work performed between June 12, 1984 and November 13, 1985 in accordance with 29 U.S.C. § 216 which allegedly "authorizes damages for a period of two years preceding the filing of an action."[7]  With respect to payments of damages prior to November 13, 1985 plaintiffs acknowledge the existence of Section 2(c) of the 1985 amendments which states:

> No State, political subdivision of a State ... shall be liable under section 16 [29 U.S.C.A. § 216] of the Fair Labor Standards Act of 1938 ... for a violation of Section ... 7 [29 U.S.C.A. § 207] of such Act occurring before April 15, 1986, with respect to any employee of the State, political subdivision ... who would not have been covered by such Act under the Secretary of Labor's special enforcement policy on January 1, 1985, and published in sections 775.2 and 775.4 of title 29 of the Code of Federal Regulations....

However, plaintiffs argue that this provisions constitutes retroactive legislation which violates the Fifth Amendment due process clause by abrogating plaintiffs' right to overtime pay which, they contend, became vested as of November 13, 1985 when Congress passed the 1985 amendments and which plaintiffs took steps to enforce by delivering their petition to the city.

Second, plaintiffs submit that "it is correct and appropriate" to calculate damages based on their having been paid regular straight time for 224 hours in each twenty-eight-day work cycle.  Plaintiffs point out that their pay stubs reflect that they were paid for these hours worked.  However, in their reply brief plaintiffs appear to change their minds as to these calculations contending that defendant "admits" that plaintiffs were paid only for hours worked *after sleep time* had been deducted.  Thus plain-

tiffs now argue that in addition to overtime pay they are also entitled to further compensation at the regular rate for the deducted sleep-time hours.  In support thereof plaintiffs point to defendant's brief at page 18 and testimony by Sharon Graham, the payroll manager.

In response to plaintiffs' damage claim defendant argues that liability under the FLSA accrues only from April 15, 1986 as so provided in the 1985 amendments, Section 2(c) as cited above.  Opposing plaintiffs' assertion that Section 2(c) constitutes retrospective legislation, defendant cites *Seese v. Bethlehem Steel Company*, 168 F.2d 58 (4th Cir.1948).  There, plaintiffs appealed from the dismissal of their overtime claim under the FLSA.  While this claim was pending in the court below, Congress passed the Portal-to-Portal Act of 1947 which took away plaintiffs' right of recovery and was the basis for the dismissal.  On appeal plaintiffs challenged the constitutionality of the Portal-to-Portal Act on several grounds, one of which was that it deprived plaintiffs of vested rights under the Fifth Amendment.  The Fourth Circuit however rejected this argument.  The court stated:

> What was taken away was *the right to recover* on claims of purely statutory origin, claims given by statute not as compensation for labor performed but as a means of regulating wages and hours of work in interstate commerce....  Since the legislature may repeal its own act, it may take away that which has no existence save by virtue of that act." (Emphasis added.)

*Id.* at 64.

■ In this instance, defendant is liable to plaintiffs for any overtime compensation due but only from April 15, 1986 to the present.  Plaintiffs' claim for overtime pay for work performed between June 12, 1984 and November 13, 1985 is denied.  Although plaintiffs contend that 29 U.S.C. § 216 authorizes damages back to June of 1984, the court can find nothing in Section

---

7.  This action was filed June 12, 1986.

216 to bear this out.[8]

■ Plaintiffs' claim that Section 2(c) takes away their vested rights to overtime pay is without merit. The court agrees with defendant that Congress clearly had the authority without constitutional ramifications to enact Section 2(c) to limit an employer's liability until after April 15, 1986. Applying the reasoning of the Fourth Circuit in *Seese, supra,* the only right plaintiffs hold is a statutory right of recovery created by Congress. As its creator, Congress has the authority to establish conditions affecting that right as it sees fit. Limiting liability until April 15, 1986 is such a condition within Congress' authority.

Furthermore, plaintiffs' argument is not cogent in light of the legislative history of the 1985 amendments. The purpose of Section 2(c) as revealed in the legislative history was to provide "lead time" to states and localities to "reorder their budgetary priorities while maintaining fiscal stability" rather than forcing them into immediate compliance, bearing potentially great financial responsibilities. 1985 U.S. Code & Ad. News 651, 656. Because the states and their political subdivisions have been exempt from the FLSA in areas of traditional governmental activity for over a decade this "lead time" is not unreasonable.

Based on the foregoing, defendant's liability for overtime compensation accrued as of April 15, 1986. Therefore, plaintiffs are entitled to monetary overtime compensation for any hours worked in excess of FLSA's maximum 212 hours on or after April 15, 1986. As previously stated the overtime computations shall be determined without deducting any sleep time hours. Inasmuch as plaintiffs state that they have already been paid for 224 hours at the regular rate, the first twelve hours of this overtime award should be computed at the half time rate rather than time and a half. Because plaintiffs Cavanaugh, Seybuck, E. Davis and Forest Thomas did not object to defendant's sleep time policy by signing the petition, they consent to their sleep time hours being deducted and are not entitled to damages.[9]

Plaintiffs' contention that they are also entitled to further compensation for sleep time hours at the regular rate is not substantiated by the existing record. Several depositions by defendant's management personnel indicate that sleep time was deducted only for purposes of computing overtime and that such deductions did not affect plaintiffs' pay based on hours worked. In fact, plaintiffs admit in their brief that the payroll stubs reveal their compensation at the regular rate was for hours worked including sleep time. Accordingly, plaintiffs are not entitled to further compensation on this account.

As a final note on damages, the court can find nothing in the record for determining damages with respect to defendant's violation of the compensatory time off provision of the FLSA. Therefore, plaintiffs' recovery is limited to damages accruing as a result of defendant's violation of the sleep time provisions only.

### c. *Liquidated Damages*

Plaintiffs also contend that they are entitled to liquidated damages for all hours worked in excess of 212 hours and for any comp time that has accrued in lieu of overtime pay because of defendant's violation of 29 U.S.C. § 207(k) and (*o*). Inasmuch as no actual damages resulted from defendant's violation of 29 U.S.C. § 207(*o*), liquidated damages will be considered with respect to the sleep time violation only.

■ The parties appear to be in agreement as to the law on this issue. Where an employer is in violation of the FLSA overtime provisions, 29 U.S.C. § 216 provides for liquidated damages in an additional amount equal to the damages for unpaid overtime compensation. This provision however is subject to 29 U.S.C. § 260 which states that such recovery is within the discretion of the trial court if "the employer shows to the satisfaction of the court that

---

**8.** During oral argument this portion of plaintiffs' damage claim was withdrawn by plaintiffs' counsel.

**9.** *See* Footnote 6, *supra.*

the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation.... *See Burnley v. Short,* 730 F.2d 136, 140 (4th Cir.1984).

Plaintiffs contend that liquidated damages for hours worked in excess of 212 hours should be awarded because under the facts defendant cannot meet the requirements for good faith and reasonable grounds with respect to its unlawful action in deducting sleep time without a prior agreement and its illegal comp time policy. Plaintiffs argue that defendant had in its possession "presumably for an extended period of time" the actual text published in 1974 of 29 C.F.R. § 553.15(b) which covers the sleep time deduction. Also, plaintiffs point to another document put out by the National League of Cities entitled "FLSA: What It Means, What to Do" which defendant possessed prior to April 15, 1986 and which discussed this deduction and the fact situation in the *Beebe* case. Finally, plaintiffs submit that defendant intentionally withheld facts in its letter to the Wage and Hour Deputy Administrator requesting verification as to the deduction provision when it failed to inform the deputy administrator that its employees had expressly objected to the deduction.

In response to plaintiffs' argument, defendant contends that its actions regarding sleep time deductions were in good faith because said acts were in reliance on the Wage and Hour opinion letter which unequivocally stated that "no vote was required." Defendant points out that the record reveals that defendant had the fire chief get a written confirmation as to how to take advantage of the sleep time provisions and that both the fire chief and city manager believed and relied upon this written opinion letter in adopting the city's sleep time policy.

With respect to defendant's violation of the sleep time provisions the court is of opinion that the facts indicate defendant acted in good faith and that it had reasonable grounds for believing that its acts were not unlawful. Not only did defendant

have its fire chief attend the League of Cities seminar to learn how to comply with the FLSA in August, 1985, but when the fire chief reported back to the city that "no vote was required" for implementing the 207(k) exemption, a written confirmation was sought and received by defendant in the form of an opinion letter from the Deputy Assistant Regional Administrator, Alfred Perry, in October, 1985 which stated that "no vote was required." Although plaintiffs argue that defendant had in its possession the regulations regarding sleep time deductions, a reasonably prudent person in defendant's position would have justifiably relied on an opinion letter by a deputy administrator from the Wage and Hour Division as to the workings of Section 207(k) rather than relying on his own interpretations of the regulations.

Plaintiffs also claim that defendant could not have acted in good faith because it failed to present all the facts to the deputy administrator when seeking the opinion letter, particularly the fact that plaintiffs had filed a petition objecting to the sleep time deductions. The court can find nothing in the record to show that defendant intentionally failed to mention this fact to Wage and Hour when seeking this opinion. Although this particular fact is important today in light of the present litigation, it is reasonable to assume that a reasonably prudent person in defendant's position back in 1985 would not have considered this fact relevant in light of his recent education at a seminar with Wage and Hour people where it was learned that no vote would be required from employees if no prior agreement was in existence and sleep time deductions were made a condition of employment.

■ Thus, based on the foregoing, defendant's actions, although in violation of the sleep time provisions, were in good faith and reasonable under the circumstances and plaintiffs' motion for liquidated damages is denied as it pertains to the Section 207(k) claim.

In accordance with the provisions of 29 U.S.C. § 216(b) the plaintiffs are entitled to recover a reasonable attorney's fee and the

costs of the action be paid by the defendant employer. Plaintiffs' counsel is directed to submit by affidavit within ten days from the date of this order an itemized statement of the time, expenses and costs expended in the prosecution of this action.

### CONCLUSION

In summary, the court finds that defendant violated 29 U.S.C. § 207(k) and (*o*); that plaintiffs are entitled to injunctive relief prohibiting defendant from utilizing either subsection (k) or (*o*) until such time as the parties may decide to conform with these provisions; that plaintiffs are entitled to damages in the form of overtime pay as of April 15, 1986 to the present for any hours worked during a regular twenty-eight-day work cycle which exceed the FLSA's maximum of 212 hours; that the first twelve hours of overtime should be computed at a half time rate; and that plaintiffs are entitled to recover a reasonable attorney's fee, costs and expenses. Plaintiffs' claim for liquidated damages is denied.

In the event of a recovery by the plaintiffs, the parties have agreed to submit a stipulation as to the amount of damages, exclusive of attorney's fees and costs, to be recovered by the plaintiffs in accordance with the court's adjudication. Counsel are directed to submit such stipulation within ten days from the date of this order for incorporation in the judgment to be entered which will also include the injunctive relief to which plaintiffs are entitled.

**SO ORDERED.**