Marvin O. WILSON, Jr., et al., Plaintiffs,

v.

CITY OF CHARLOTTE, NORTH CAROLINA, Defendant.

No. C–C–88–79–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Nov. 21, 1988.

Thomas A. Woodley, Gregory K. McGillivary, Mulholland & Hickey, Washington, D.C., Louis L. Lesesne, Jr., Gillespie Lesesne & Connette, Charlotte, N.C., for plaintiffs.

F. Douglas Canty, Charlotte, N.C., for defendant.

## MEMORANDUM OF DECISION

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on the parties' cross-motions for summary judgment, filed October 27, 1988, and November 7, 1988, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Both parties are seeking partial summary judgment on the issue of Defendant's liability, with the issue of damages to be determined at a later time. Neither party has request-ed a hearing, and this Court believes oral argument would not aid this Court's decisional process; the parties have adequately discussed the issues in their supporting memoranda of law, and they have provided sufficient supporting factual documentation. For the reasons that follow, Plaintiffs' Motion for Partial Summary Judgment will be granted.

## I. NATURE OF THE CASE AND QUESTION PRESENTED

This case arises under the Fair Labor and Standards Act of 1938 as amended ("FLSA" or "the Act"), 29 U.S.C.A. §§ 201–219 (West 1965, 1978, 1985 & Supp. 1988). This Court's jurisdiction over the present case has several statutory bases: 29 U.S.C.A. § 216(b) (West Supp.1988), 28 U.S.C.A. § 1331 (West Supp.1988) ("federal question jurisdiction"); and 28 U.S.C.A. § 1337 (West Supp.1988) (civil actions related to commerce regulation).

Plaintiffs are fire fighters who are members of Local Number 660 of the International Association of Fire Fighters ("Local 660") and who are employed by Defendant, the City of Charlotte, North Carolina ("City of Charlotte" or "City"). Plaintiffs allege that Defendant has violated Section 7(o) of the FLSA, 29 U.S.C.A. § 207(o) (West Supp.1988), by granting to the Plaintiffs, despite the lack of an agreement with Plaintiffs' designated representative, compensatory time off ("comp time") in lieu of monetary compensation for overtime hours the Plaintiffs have worked.

Plaintiffs are seeking several forms of relief: (1) a declaratory judgment, 28 U.S.C.A. § 2201 (West Supp.1988), declaring that Defendant has willfully and wrongfully violated its statutory obligations under Section 7(o) of the FLSA, and has thereby deprived Plaintiffs of their rights; (2) a permanent injunction restraining Defendant from withholding any compensation that is due to each of the Plaintiffs and from future violations of Plaintiffs' rights; (3) an order directing Defendant to make a complete and accurate accounting of all the compensation to which the Plaintiffs are entitled; (4) monetary damages in the form

of back pay compensation *and* liquidated damages equal to each Plaintiffs' unpaid compensation, plus interest, 29 U.S.C.A. § 216(b) (West Supp.1988); and (5) the costs of this action, including reasonable attorney's fees.

This case presents a difficult question of statutory interpretation. When a public agency of a political subdivision of a State does not have a collective bargaining agreement, memorandum of understanding, or any other agreement between itself and its employees' designated representative regarding compensation for the employees' overtime work, does Section 7(*o*) of the FLSA, 29 U.S.C.A. § 207(*o*) (West Supp. 1988), compel the public agency to compensate such employees monetarily, rather than with time off, for the overtime hours?

## II.  FACTS

The parties agree that is there is no genuine dispute about the following material facts.[1]

As mentioned before, the Plaintiffs are fire fighters employed by the Defendant City of Charlotte, North Carolina. Local 660 is a labor association and affiliate of the International Association of Fire Fighters, and its membership consists of the fire fighters employed by the City of Charlotte.

Since at least 1978, the City of Charlotte has not been a party to a collective bargaining agreement, memorandum of understanding, or any other agreement with representatives of Plaintiffs or any other labor representatives of City employees.[2]

On December 3, 1985, Marvin O. Wilson, Jr. ("Wilson"), President of Local 660, sent a letter to Fire Chief R.L. Blackwelder ("Blackwelder") pointing out that Section 7(*o*)(2)(A)(i) of the FLSA, 29 U.S.C.A. § 207(*o*)(2)(A)(i) (West Supp.1988), which Congress had recently enacted,[3] states that when employees have selected a representative then the employer may award compensatory time only pursuant to an agreement between the employer and the chosen representative of the employees.

In the December 3rd letter, Wilson notified the City of Charlotte that the employees in the City's fire department had selected Local 660 as their representative for the purpose of discussing and entering into an agreement regarding the assignment and use of compensatory time in lieu of overtime pay. Accompanying the letter was a fourteen-page petition signed by the fire fighters confirming that Local 660 had been chosen as their representative for this purpose. Wilson further indicated in his letter that in the absence of an agreement under Section 7(*o*)(2)(A)(i) of the FLSA, the City of Charlotte must monetarily compensate the fire fighters for all overtime. On December 2, 1985, Wilson submitted a similar letter to City Manager O. Wendell White ("White").[4]

On December 3, 1985, Chief Blackwelder sent Wilson a reply letter stating that North Carolina state law prohibits local government employers from entering into contracts with labor organizations, N.C. Gen. Stat. § 95–98 (1985),[5] and, therefore,

---

1.  Plaintiffs' Motion for Partial Summary Judgment at 3; Def't's Brief in Support of Countermotion for Partial Summary Judgment at 1.

2.  Wilder Aff. at 2–3.

3.  The Fair Labor Standards Amendments of 1985, Pub.L. 99–150, § 2(a), 99 Stat. 787, 789 (1985); *see Dillard v. Harris,* 695 F.Supp. 565 (N.D. Ga.1987).

4.  Wilson Declaration, Para. 2, and Exhibit A; Blackwelder Depo. at 23–25. Pursuant to Section 1746 of Title 28, United States Code, Wilson has provided his declaration, made under penalty of perjury, in lieu of a supporting sworn affidavit.

5.  Section 95–98 states the following:

Any agreement, or contract, between the governing authority of any city, town, county, or other municipality, or between any agency, unit, or instrumentality thereof, or between any agency, instrumentality, or institution of the State of North Carolina, and any labor union, trade union, or labor organization, as bargaining agent for any public employees of such city, town, county or other municipality, or agency or instrumentality of government, is hereby declared to be against the public policy of the State, illegal, unlawful, void and of no effect.

N.C. Gen. Stat. § 95–98 (1985).

the City would not discuss or enter into an agreement with Local 660 concerning compensatory time under the federal FLSA.[6] On December 12, 1985, City Manager White sent Wilson a similar letter.[7]

On January 10, 1986, the North Carolina Department of Justice ("NCDOJ") sent a memorandum to law enforcement agency officials explaining the NCDOJ's understanding of the 1985 amendments to the FLSA, Pub.L. 99–150, 99 Stat. 787 (1985). The NCDOJ January 10th memorandum stated, in pertinent part, that, "Section 2 of P.L. 99–150, provides that public agencies may utilize a compensatory time plan in lieu of monetary compensatory only (1) pursuant to a collective bargaining agreement, memorandum of understanding, or any other agreement between the public agency and representatives of such employees . . . ."[8]

Prior to March 24, 1986, the City of Charlotte maintained a system whereby its employees who performed overtime work in job classifications that were considered "included" for the purposes of the FLSA were compensated for such overtime work through compensatory time off at an hour-for-hour rate, or overtime pay at the rate of one and one-half times the regular pay rate. The City of Charlotte determined, in its sole discretion, whether to award compensatory time off or cash payment for overtime worked. Employees not in the "included" category could receive only compensatory time off for overtime worked, but then only if the department head deemed it advisable to award the time off.[9]

On March 24, 1986, the City Council approved a resolution changing the City's overtime policy to allow the banking of up to 240 hours of compensatory time and to set other procedures for the assignment and use of compensatory time. The resolution also granted each department of the City of Charlotte discretion on whether to pay overtime at the rate of one and one-half times the regular pay rate for each hour of overtime worked or to award compensatory time at the rate of one and one-half hours off for each hour of overtime worked in lieu of payment.[10]

On April 11, 1986, City Personnel Director William Wilder ("Wilder") circulated a memorandum to all department heads explaining the City's resolution concerning compensatory time and the provisions of the Fair Labor and Standards Act.[11] The April 11th memorandum enclosed a sample form for recording compensatory time earned and taken.

On April 11, 1986, R.J. Ellison, Assistant Chief, Administration, of the Charlotte Fire Department, distributed a memorandum to all battalion chiefs describing the method for reporting the accrual and use of compensatory time.[12]

Beginning on April 15, 1986, the City of Charlotte has required all of its new employees to read and sign a statement stating that they understand the City's policy of granting, in its sole discretion, compensatory time off or cash payments for work that is considered overtime work and that they accept the policy as a condition of employment.[13]

On June 5, 1986, Personnel Director Wilder sent a memorandum to all department heads stating that the FLSA requires that an agreement be reached with new employees hired after April 15, 1986. Attached to the June 5th memorandum was a copy of a statement of understanding regarding compensatory time under the FLSA, which was to be given to, and signed by, each new

---

6. Wilson Declaration, Para. 3 and Exhibit B.

7. Wilson Declaration, Para. 3 and Exhibit C; Blackwelder Depo. at 26–28.

8. Wilson Declaration, Para. 4 and Exhibit D at 3.

9. Wilder Aff. at 1.

10. Wilson Declaration, Para. 5 and Exhibit E; Wilder Depo. at 34; Wilder Aff. at 1–2.

11. Wilson Declaration, Para. 5 and Exhibit F.

12. Wilson Declaration, Para. 6 and Exhibit G.

13. Wilder Aff. at 2.

employee.[14]

On July 16, 1986, Wilson again sent a letter to Chief Blackwelder reiterating that Local 660, as the fire fighters' representative, wished to meet and discuss entering into an agreement with respect to compensatory time under the FLSA. Wilson enclosed a copy of an opinion letter, dated July 1, 1986, which he had received from the General Counsel of the International Association of Fire Fighters. That opinion letter stated that, in the absence of an agreement with Local 660, the City of Charlotte could not lawfully award compensatory time to the fire fighters for their overtime work.[15]

In a reply letter dated July 28, 1986, Chief Blackwelder informed Wilson that the City of Charlotte could grant compensatory time to the fire fighters without entering into an agreement with Local 660; consequently, Chief Blackwelder also informed Wilson that he would not meet with him to discuss the matter.[16]

On June 26, 1987, Wilson once more wrote to Chief Blackwelder and enclosed with his letter a copy of *Jacksonville Professional Fire Fighters Ass'n, Local 2961, IAFF v. City of Jacksonville, North Carolina,* 685 F.Supp. 513 (E.D.N.C.1987) (Dupree, J.).[17] In the June 26th letter, Wilson explained that in *Jacksonville Professional Fire Fighters* the court had held that the City of Jacksonville was obligated under Section 7(*o*)(2)(A)(i) of the Act, 29 U.S.C.A. § 207(*o*)(2)(A)(i) (West Supp.1988), to enter into an agreement with the fire fighters' selected union representative if it wanted to utilize the alternative of granting compensatory time instead of paying cash for overtime hours. Wilson again asked the City of Charlotte to reconsider its position and enter into a compensatory time agreement with the fire fighters' chosen representative, Local 660.[18]

In a letter dated July 27, 1987, Chief Blackwelder responded to Wilson's inquiries regarding *Jacksonville Professional Fire Fighters,* 685 F.Supp. 513, and informed him that it was the City of Charlotte's opinion that the court's decision in *Jacksonville Professional Fire Fighters* was incorrect and did not apply to the City of Charlotte. Chief Blackwelder also stated that the City of Charlotte "will continue to offer compensatory time in lieu of overtime pay at the discretion of the management of the Charlotte Fire Department."[19]

On February 19, 1988, Plaintiffs filed their Complaint.

## III. APPLICABLE LAW

### A. *Standard of Decision*

Rule 56 of the Federal Rules of Civil Procedure provides, in pertinent part, the following:

(a) A party seeking to recover upon a claim ... or to obtain a declaratory judgment may ... move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

(b) A party against whom a claim ... or a declaratory judgment is sought may at any time move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

(c) The motion shall be served at least 10 days before time fixed for the hearing. The adverse party prior to the day for the hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

**14.** Wilson Declaration, Para. 7 and Exhibit I; Blackwelder Depo. at 47–48.

**15.** Wilson Declaration, Para. 8 and Exhibit J; Blackwelder Depo. at 48–49.

**16.** Wilson Declaration, Para. 9 and Exhibit K; Blackwelder Depo. at 49–50.

**17.** Discussed *infra.*

**18.** Wilson Declaration, Para. 10 and Exhibit L; Wilder Depo. at 46–47.

**19.** Wilson Declaration, Para. 11 and Exhibit M; Blackwelder Depo. at 55–59.

moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(a), (b), (c).

Recently, the United States Supreme Court has had several occasions to construe the standards established in Rule 56. In *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court stated the following:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Id.* 106 S.Ct. at 2552–53; *accord White v. Rockingham Radiologists, Ltd.,* 820 F.2d 98, 101 (4th Cir.1987). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; Rule 56 requires that there be no genuine issue of material fact. In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court noted that "the substantive law will identify which facts are material." *Id.* 106 S.Ct. at 2510.

### B. Substantive Law

In 1987, the United States Supreme Court held in *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985) (5–4), that a municipal transit authority was not immune from the minimum wage and overtime requirements of the FLSA. *Id.* at 531–532, 558, 105 S.Ct. at 1021 (overruling *National League of Cities v. Usery,* 426

U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976)). The Court's decision in *Garcia* made the FLSA fully applicable to state and local governments.[20]

In the wake of *Garcia,* Congress sought to amend the FLSA. Fair Labor Standards Amendments of 1985, Pub.L. 99–150, 99 Stat. 787 (1985). *See generally* S.Rep. No. 159, 99th Cong., 1st Sess. 5–9, *reprinted in* 1985 U.S.Code Cong. & Admin.News 651, 653–656 ("[I]n the wake of *Garcia,* the States and their political subdivisions have identified several respects in which they would be injured by immediate application of the FLSA. This legislation responds to these concerns by adjusting certain FLSA principles with respect to employees of states and their political subdivisions...."); H.R. Conf. Rep. No. 357, 99th Cong., 1st Sess., *reprinted in* 1985 U.S.Code Cong. & Admin.News 668.

Section 2 of Public Law 99–150, 99 Stat. 787, 789, codified at 29 U.S.C.A. § 207(*o*) (West Supp.1988), added a new section to the FLSA, stating, in pertinent part, the following:

> (1) Employees of a public agency which is a State, a political subdivision of a State, or an interstate governmental agency may receive, in accordance with this subsection and in lieu of overtime compensation, compensatory time off at a rate no less than one and one-half hours for each hour of employment for which overtime compensation is required by this section.
>
> (2) A public agency may provide compensatory time under paragraph (1) only—
>
> (A) pursuant to—
>
> (i) applicable provisions of a collective bargaining agreement, memorandum of understanding, or any other agreement between the public agency and representatives of such employees; or

**20.** *Garcia,* 469 U.S. at 559, 105 S.Ct. at 1022, is a landmark case establishing the present Court's views on the subject of federal-state relations under the Constitution. The five-member majority of the Court, speaking through Associate Justice Blackmun, held, over a vigorous dissent, that "[s]tate sovereign interests ... are more properly protected by procedural safeguards inherent in the *structure* of the federal system than by judicially created limitations" upon Congress' exercise of its power under the commerce clause. *Id.* at 552, 105 S.Ct. at 1018 (emphasis added).

(ii) in the case of employees not covered by subclause (i), an agreement or understanding arrived at between the employer and the employee before the performance of the work; and

(B) if the employee has not accrued compensatory time in excess of the limit applicable to the employee prescribed in by paragraph (3).

In the case of employees described in clause (A)(ii) hired prior to April 15, 1986, the regular practice in effect on April 15, 1986, with respect to compensatory time off for such employees in lieu of receipt of overtime compensation, shall constitute an agreement or understanding under such clause (A)(ii). Except as provided in the previous sentence, the provision of compensatory time off to such employees for hours worked after April 14, 1986, shall be in accordance with this subsection.

29 U.S.C.A. § 207(*o*)(1), (2) (West Supp. 1988).

Plaintiffs contend that this new section of the FLSA requires Defendant to pay monetary compensation, at the rate of one and one-half times the regular hourly rate, for all overtime hours because Defendant does not have an agreement with Plaintiffs' designated representative allowing the use of comp time in lieu of monetary compensation. Defendant claims that this amendment to the FLSA does not require it to negotiate an agreement with Plaintiffs' designated representative, Local 660, and that it may use comp time because that was the City's established policy prior to April 15, 1986. In addition, Defendant argues that Section 7(*o*) of the FLSA does not give to state and local employees the right to designate a representative, and, therefore, there must be some other source of state or federal law giving Plaintiffs the right to designate a representative for the purposes of negotiating an agreement with the city under Section 7(*o*)(2)(A)(i) of the FLSA, 29 U.S.C.A. § 207(*o*)(2)(A)(i) (West Supp.1988); Defendant contends that there is no federal or state law source giving to Plaintiffs the right to designate a representative. Defendant further notes that Section 95–98 of the North Carolina General Statutes prohibits the City from entering into any sort of agreement with a representative of the City's employees.

Several courts have recently construed the newly enacted Section 7(*o*) of the FLSA: *Bleakly v. City of Aurora,* 679 F.Supp. 1008 (D.Col.1988) (Carrigan, J.); *Int'l Ass'n of Fire Fighters, Local 2203 v. West Adams County Fire Protection Dist.,* Civ. Action No. 87–F–16 (D. Col. Mar. 18, 1988) (Finesilver, Ch. J.); *Jacksonville Professional Fire Fighters Ass'n Local 2961, IAFF v. City of Jacksonville,* 685 F.Supp. 513 (E.D.N.C.1987) (Dupree, J.); *Dillard v. Harris,* 695 F.Supp. 565 (N.D. Ga.1987) (Freeman, J.); *Dillard v. Harris,* 86–CV–834–RCF (N.D. Ga. Mar. 30, 1988) (order denying motion to reconsider). All of these cases have held that Section 7(*o*) of the FLSA requires state and local governments to pay their employees monetary compensation for overtime when the state and local governments have elected to refuse to enter into an agreement regarding comp time with the employees' chosen representative. *E.g, Dillard v. Harris,* 86–CV–834–RCF, slip op. at 3–4 ("[T]he FLSA does not require defendants to negotiate with plaintiff's representatives. Rather, the FLSA *requires defendants to pay plaintiffs overtime* at a rate not less than one and one-half times plaintiffs' regular rate of pay *unless* defendants exercise their option of negotiating an agreement with plaintiff's representatives concerning comp time in lieu of cash overtime." (citations omitted)).

## IV.  DISCUSSION

The parties agree that there are no genuine issues as to the material facts of this case, and, therefore, it is ripe for summary judgment. Based on the material facts outlined above, this Court is of the opinion that the Defendant City of Charlotte violated Section 7(*o*) of the FLSA by using comp time without first entering into an agreement with Local 660, the Plaintiffs' designated representative. The City was aware that Plaintiffs had designated Local 660 as their representative for the purpose of negotiating an agreement under Section

7(*o* )(2)(A)(i) of the FLSA, but the City elected to disregard this information and proceeded to award comp time in violation of the FLSA.

■ Defendant's principal argument is that the City could not enter into a comp time agreement with Local 660 under the FLSA because state law, N.C. Gen. Stat. § 95–98 (1985), makes such agreements "illegal, unlawful, void and of no effect." *Id.* In *Jacksonville*, the court rejected an argument of precisely this sort. 685 F.Supp. at 521–522; *accord Dillard v. Harris*, 695 F.Supp. at 568. This Court agrees with the sound reasoning of the court in *Jacksonville Professional Fire Fighters*. Public employers are not permitted under the FLSA to take advantage of the comp time alternative unless and until they reach a prior agreement with the employees' designated representative.[21] If the public employer does not achieve an agreement—or if it does not or cannot enter into such an agreement—then it is statutorily bound to pay monetary compensation for FLSA overtime work. Simply put, the City is not eligible for the comp time option without satisfying the prerequisites accompanying that option; a public employer cannot take the statutory benefit of the comp time alternative while rejecting the attendant requirements that Congress plainly attached to that alternative.

■ Defendant repeatedly asserts in its brief that (1) Plaintiffs had no right, under federal or state law, prior to the passage of the 1985 FLSA to designate a representative to deal with the City and (2) that the 1985 amendments do not create such a right. While this Court is content to rest its decision upon the reasoning of the court in *Jacksonville Professional Fire Fighters*, it bears noting here that almost twenty years ago a three-judge panel of this district held in *Atkins v. City of Charlotte*, 296 F.Supp. 1068 (W.D.N.C.1969) (Craven, C.J.), that a North Carolina statute which prohibited city employees from joining labor unions, N.C. Gen Stat. § 95–97, was unconstitutional and void on its face as an abridgement of freedom of association. *Atkins*, 296 F.Supp. at 1075. This Court is of the opinion that *Atkins* implicitly recognizes the ability of the City's employees to designate a local labor organization as their representative. Clearly the state and its governmental subdivisions do not have to bargain with the representative, *id.* at 1077, and clearly the state may prohibit fire fighters and other municipal employees from engaging in disruptive labor activities—such as strikes, *id.* at 1076–77. But it quite another thing to say, as Defendant says here, that the fire fighters have no right to designate their own representative. Perhaps the day has come when the "labor unions may ... persuade state government of the asserted value of collective bargaining agreements." *Id.* at 1077.

---

**21.** The regulations support this interpretation of the statute:

(a) *General* (1) As a condition for use of compensatory time in lieu of overtime payment in cash, section 7(*o* )(2)(A) of the Act requires an agreement or understanding reached prior to the performance of the work. This can be accomplished pursuant to a collective bargaining agreement, a memorandum of understanding or any other agreement between the public agency and representatives of the employees. If the employees do not have a representative, compensatory time may be used in lieu of cash overtime compensation only is such an agreement or understanding has been arrived at between the public agency and the individual employee before the performance of work. No agreement or understanding is required with respect to employees hired prior to April 15, 1986, *who do not have a representative,* if the employer had a regular prac-

tice in effect on April 15, 1986, of granting compensatory time off in lieu of overtime pay.

. . . .

(b) *Agreement of understanding between the public agency and a representative of the employees.* (1) Where employees have a representative, the agreement or understanding concerning the use of compensatory time *must be between the representative and public agency* either through a collective bargaining agreement or through a memorandum of understanding or other type of oral or written agreement. In the absence of a collective bargaining agreement applicable to the employees, *the representative need not be a formal or recognized bargaining agent as long as the representative is designated by the employees.*

29 C.F.R. § 553.23(a), (b) (1987) (emphasis added).

## V. CONCLUSION

THEREFORE, Plaintiffs' Motion for Partial Summary Judgment, filed October 27, 1988, is GRANTED. Defendant's Countermotion for Partial Summary Judgment, filed November 7, 1988, is DENIED.

Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, no later than thirty (30) days after this Memorandum of Decision is filed, the parties shall either (a) file a joint stipulation detailing their resolution of the issue of Plaintiffs' relief or (b) inform the Clerk that they have been unable to reach an amicable resolution on the issue of Plaintiffs' relief.