[Cite as *Elita One v. Emergency Med. Transport, Inc.*, 2021-Ohio-2990.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| ELITA ONE, et al., | CASE NO. 2021-T-0011 |
| Plaintiffs-Appellants, | |
| - v - | Civil Appeal from the<br>Court of Common Pleas |
| EMERGENCY MEDICAL<br>TRANSPORT, INC., | Trial Court No. 2020 CV 00444 |
| Defendant-Appellee. | |

**O P I N I O N**

Decided: August 30, 2021
Judgment: Affirmed

*Michael D. Rossi*, Guarnieri & Secrest, PLL, 151 East Market Street, P.O. Box 4270, Warren, OH 44482 (For Plaintiffs-Appellants).

*Scott P. Sandrock* and *Adam D. Fuller*, Brennan, Manna & Diamond, LLC, 75 East Market Street, Akron, OH 44308 (For Defendant-Appellee).

JOHN J. EKLUND, J.

{¶1} Appellants, Elita One and Troy Ayers, appeal the trial court's entry granting summary judgment in favor of appellee, Emergency Medical Transport, Inc. ("EMT"). Finding no reversible error, we affirm.

{¶2} EMT employed appellants as paramedics—each for two separate periods of employment—working 24-hour shifts. Ayers initially worked for EMT from October 2012 through September 2015; One, from December 2015 through January 2017. After

voluntarily resigning their positions, EMT rehired Ayers at the end of 2016; One, at the end of 2017. Appellants again voluntarily resigned their employment in March 2019.

{¶3} On March 19, 2020, appellants initiated this action to recover unpaid overtime compensation for hours worked during their reemployment period, from March 1, 2017, until their 2019 resignations. Appellants asserted EMT violated provisions of the Fair Labor Standards Act ("FLSA"), codified at 29 U.S.C. 201, et seq. Following discovery, including the taking of depositions, the parties filed cross motions for summary judgment.

{¶4} The following hour and wage policy ("Plus Four Policy") of the EMT Employee Handbook ("Handbook") is at issue:

> **16/24 and 'plus four' –** Ambulance personnel working a 24-hour shift will be paid a minimum of 16 hours for that shift. You are being paid from 07:00 to 23:00 hours military time. In the event that a call which originated prior to 23:00 hours keeps you out past 23:00 hours, you will be paid hour for hour (actual time) for the time out past 23:00 hours. In the event the call originates after 23:00 hours, a four hour additional block of time will be paid for that shift regardless of the length of time needed to complete that call (unless longer than 4 hours). In the event that a second call comes in after 23:00 hours but prior to 07:00 of the next day, the full 24 hour period will be paid.
>
> Please review your paycheck for errors. If you find a mistake, report it to payroll immediately. Your supervisor will assist you in taking the steps necessary to correct the error. * * *

There is no dispute that, unless they were called out, appellants were permitted to sleep in the designated areas at the station between 11:00 p.m. and 7:00 a.m. They were essentially permitted to use the eight-hour period of time as they wished, except to leave the station or to have visitors.

2

Case No. 2021-T-0011

{¶5} The Handbook additionally provides an overtime pay procedure for nonexempt employees, which states, in relevant part: "All hourly employees will be paid one and one-half times your regular hourly rate of pay for all hours worked beyond the fortieth hour in any given work week." Each of these compensation policies were in place during both periods of appellants' employment with EMT.

{¶6} It is undisputed that appellants were paid for the first 16 hours of every 24-hour shift; were paid for all hours they were called to duty during the 8-hour sleeping period; were paid for 4 hours each time they transported a patient during the sleeping period, even if they did not work for 4 hours; and were paid overtime for all hours worked over 40 in a work week. The dispute centers on the non-payment of wages for idle time spent at EMT's station during the 8-hour sleeping period. Appellants contend EMT was obligated to pay them for all 24 hours of each shift as "hours worked"; EMT contends it was permitted to exclude up to 8 hours of "sleep time" from its obligation.

{¶7} On February 25, 2021, the trial court concluded appellants' claim fails as a matter of law and granted summary judgment in favor of EMT. The court determined that appellants expressly agreed to the Plus Four Policy as written in the Handbook and, alternatively, that appellants impliedly agreed to the Plus Four Policy by returning to work for EMT and accepting paychecks without objecting to the policy, of which they both had knowledge. The trial court further concluded that the accommodations at the station were sufficient to provide adequate sleeping areas.

{¶8} Appellants advance one assignment of error from the trial court's judgment:

{¶9} "The trial court erred in entering summary judgment in Defendant's favor and in denying summary judgment to the Plaintiffs below."

3

Case No. 2021-T-0011

{¶10} An appellate court reviews decisions awarding summary judgment de novo, i.e., independently and without deference to the trial court's decision. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996); *Peer v. Sayers*, 11th Dist. Trumbull No. 2011-T-0014, 2011-Ohio-5439, ¶ 27.

{¶11} Summary judgment is appropriate only when "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977), citing Civ.R. 56(C).

{¶12} The initial burden is on the moving party to set forth specific facts demonstrating that no issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the movant fails to meet this burden, the motion for summary judgment must be denied. *Id.* If, however, this initial burden is met, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." Civ.R. 56(E).

{¶13} The FLSA generally provides that "no employer shall employ any of his employees who in any workweek is engaged in commerce * * * for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours specified at a rate not less than one and one-half times the regular

4

rate at which he is employed." 29 U.S.C. 207(a)(1). With respect to payment of employees working 24-hour shifts, employers are required to comply with FLSA regulation 29 C.F.R. 785.22, which states:

> (a) *General.* Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked.

> (b) *Interruptions of sleep.* If the sleeping period is interrupted by a call to duty, the interruption must be counted as hours worked. If the period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, the entire period must be counted. For enforcement purposes, the Divisions have adopted the rule that if the employee cannot get at least 5 hours' sleep during the scheduled period the entire time is working time.

It is the employer's burden to demonstrate entitlement to the sleeptime exemption, and courts construe the exemption narrowly. *Roy v. Cty. of Lexington*, 141 F.3d 533, 544 (1998).

{¶14} Under their sole assigned error, appellants present two issues for review, both of which rely on the provisions of 29 C.F.R. 785.22(a). We first consider appellants' contention that there can be no express or implied agreement between an employer and an employee where an at-will employment disclaimer exists, such as the following contained in EMT's Handbook:

> **This handbook is not a contract, express or implied, guaranteeing employment for any specific duration. Although we hope that your employment relationship**

5

**with us will be very long term, either you or the Company may terminate this relationship at any time, for any reason, with or without cause or notice. Please understand that no supervisor, manager, or representative other than the President/CEO, vice president, or general manager has the authority to enter into any agreement with you for employment for any specified period or to make any promises or commitments contrary to the foregoing. Further, any employment agreement entered into by the president, the vice president, or the general manager shall not be enforceable unless it is in writing.**

(Emphasis sic.) EMT responds that this disclaimer does not preclude it from enforcing policies in the Handbook, such as the Plus Four Policy, that do not hinder either party's right to terminate the employment at will.

{¶15} Ohio "has long recognized the right of employers to discharge employees at will." (Citations omitted.) *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 103, 483 N.E.2d 150 (1985). There exists "a strong presumption in favor of a contract terminable at will unless the terms of the contract or other circumstances clearly manifest the parties' intent to bind each other." *Henkel v. Educ. Research Council of Am.*, 45 Ohio St.2d 249, 255, 344 N.E.2d 118 (1976). "[T]he existence of an express or implied contract can overcome the employment at-will presumption. In order to imply a contract, '[t]here must be specific evidence to show that the parties mutually assented to something other than at-will employment.'" *Shepard v. Griffin Servs., Inc.*, 2d Dist. Montgomery No. 19032, 2002 WL 940110, *12 (May 10, 2002), quoting *Reasoner v. Bill Woeste Chevrolet, Inc.*, 134 Ohio App.3d 196, 200, 730 N.E.2d 992 (1st Dist.1999). Employee handbooks may contain such evidence. *Shepard* at *12, citing *Kelly v. Georgia-Pacific Corp.*, 46 Ohio St.3d 134, 139, 545 N.E.2d 1244 (1989). "We note, however, that many of these documents may contain disclaimers, which require the employee to acknowledge that the

6

document does *not* create an employment contract. These disclaimers negate any inference of contractual obligations between the parties." (Emphasis added.) *Shepard* at *12, citing *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108, 570 N.E.2d 1095 (1991), paragraph one of the syllabus ("Absent fraud in the inducement, a disclaimer in an employee handbook stating that employment is at will precludes an employment contract other than at will based upon the terms of the employee handbook."). "Instead, the handbook then becomes 'merely a unilateral statement of rules and policy which creates no obligations and rights.'" *Shepard* at *12, quoting *Tohline v. Central Trust Co., N.A.*, 48 Ohio App.3d 280, 282, 549 N.E.2d 1223 (1st Dist.1988).

{¶16} Here, the express language of the disclaimer states that the Handbook is not a contract, express or implied, guaranteeing employment for any specific duration. The clear and limited purpose of this disclaimer is to negate any inference that the parties have entered into a contractual obligation for continued employment for a specific duration of time. *Cf. Tohline* at 283 ("The disclaimer manifests the absence of mutual assent to create a contract, and a contract will thus not be implied based on this handbook." (Citations omitted.)). The fact that the Handbook creates no obligation or right as to continued employment does not, however, result in the legal nullification of other policies contained in the Handbook. *See Finsterwald-Maiden v. AAA S. Cent. Ohio*, 115 Ohio App.3d 442, 446, 685 N.E.2d 786 (4th Dist.1996) ("Ohio courts have held that employee handbooks are not in and of themselves contracts of employment. However, an employee handbook may provide the terms and conditions of an at-will employment relationship." (Citations omitted.)).

7

{¶17} We agree with EMT that appellants seek a holding that is too broad for this court to reach here. The presence of the at-will disclaimer in the Handbook did not legally preclude appellants from agreeing to EMT's Plus Four Policy. To hold otherwise would require this court to read additional language or terms into the unambiguous disclaimer. Accordingly, appellants' argument is not well taken.

{¶18} Appellants next contend that, under the facts of their case, they did not agree to the Plus Four Policy, because they protested the policy contemporaneously with reporting to work and accepting paychecks. EMT responds that appellants did agree to the Plus Four Policy, because they had knowledge of the policy from their prior employment with EMT, they did not object to the policy upon reemployment, and they continued to work and accept paychecks under the policy.

{¶19} Again, the regulation provides that an employer and employee may enter into an "express or implied agreement" to exclude a "regularly scheduled sleeping period of not more than 8 hours from hours worked." 29 C.F.R. 785.22(a).

{¶20} An implied agreement requires a meeting of the minds and mutual consent. *Internatl. Assoc. of Firefighters, Local 349 v. Rome*, 682 F.Supp. 522, 529 (N.D.Georgia 1988) ("Local 349"); *Beebe v. United States*, 640 F.2d 1283, 1291, 226 Ct.Cl. 308 (1981). "'An implied agreement to deduct sleep time from an employee's compensation clearly exists if the affected employee does not assert any verbal or written protest to the application of the exemption within a reasonable period of time of (1) the adoption of the policy or (2) the employee being hired under the policy.'" *Trocheck v. Pellin Emergency Med. Serv., Inc.*, 61 F.Supp.2d 685, 693 (N.D.Ohio 1999), quoting *Roy v. Cty. of Lexington,* 928 F.Supp. 1406, 1418 (D.S.C.1996), *vacated in non-relevant part,* 948

8

F.Supp. 529 (D.S.C.1996), *affirmed,* 141 F.3d 533 (4th Cir.1998), citing *Bodie v. Columbia*, 934 F.2d 561 (4th Cir.1991). "An employee's protest does not need to rise to the level of voluntary termination of employment to avoid implication of an agreement: 'employees do not necessarily have to quit their jobs or refuse their paychecks to object effectively to the employer's exclusion of sleep and meal periods for the purposes of overtime.'" *Trocheck* at 693, quoting *Harrison v. Clarksville,* 732 F.Supp. 810, 814 (M.D.Tenn.1990); *Local 349* at 529 ("A continuation in working and accepting pay may be evidence of an implied agreement, but it is not conclusive."). "'At the very least, [however,] to negate the inference of agreement to the exclusion, the employee must expressly object within a short period after learning of the employer's intent to exclude the time.'" *Trocheck* at 693, quoting *Harrison* at 814; *accord Local 349* at 529 ("an implied agreement to exclude sleep time may not be inferred from a continuation in working and accepting pay checks where there exists contemporaneous protest to the employer's institution of a policy to exclude sleep time"), following *Beebe* at 1291 (where firefighters continuously and contemporaneously protested employer's policy to exclude sleep time, the fact that they continued to work and accept paychecks was not sufficient to constitute an implied agreement within the meaning of a similar regulation (29 C.F.R. 553.222(c))).

{¶21} EMT contends that a case brought against it by another employee in another district, involving substantially similar facts and identical legal issues, ended with a summary judgment ruling in EMT's favor and should dictate the same result here. *Emergency Med. Transport, Inc. v. Moser*, Stark C.P. Case No. 2019 CV 01843 (Aug. 13, 2020) ("The undisputed facts establish that Plaintiff and Defendant entered both an express and implied agreement to exclude a bona fide regularly scheduled sleeping

9

period of not more than 8 hours from hours worked as contemplated by 29 CFR §785.22(a), and no reasonable juror could find in Plaintiff's favor on Plaintiff's counterclaim pursuant to 29 USC §207(a).").  In that case, it was undisputed that the employee never complained about the Plus Four Policy or that he was not receiving all of the compensation to which he was entitled.  Appellants argue this case is distinguishable because they did complain about their compensation under the Plus Four Policy.  Appellants and EMT each support their arguments with deposition testimony from One and Ayers.

{¶22}  Although there is testimony that One and Ayers objected to the Plus Four Policy, the testimony is that they did so only during their first period of employment with EMT.  It is undisputed that they were both aware of the policy when rehired by EMT; neither objected to application of the policy at the time of rehire; and neither complained of or protested the policy during their second periods of employment, which is the time period relevant to their lawsuit.

{¶23}  One testified as follows:

Q. Okay. When did you first hear about the "+4" program?

A. When I initially started the first time.

* * *

Q. Okay. And did you have any questions about it?

A. He [the manager] had to help me with my paystubs for about a month, because it was so confusing.

Q. Okay. And after working through that explanation, did you understand the program?

A. Yes.

10

Case No. 2021-T-0011

Q. Did you object to it from the beginning?

A. Yes.

Q. Okay. What did you say?

A. That working – only getting the 16 hours and being there for 24 made – was not fair.

Q. Okay. And what did he say?

A. His exact words were, 'Put on your big girl panties and get over it.'

Q. And after that discussion, did you have future discussions with [the manager] about the same issue? Or was it kind of a 'one and done'?

A. Pretty much 'one and done.' [He] was not for tolerating things.

Q. Okay. So, this occurred during your first stint of employment with EMT?

A. Yes.

Q. And when you returned to employment with EMT, the "+4" program still was in effect?

A. Yes.

Q. And you knew that before you started?

A. Yes.

Q. And you knew they weren't going to change it?

A. Yes.

Q. And did you complain coming back the second time: I don't want to work here if the "+4" program existed—

A. No.

Q. –or— Alright. So, you accepted it going in; you knew it was there?

11

A. Yes.

Q. Okay. Did you complain to anybody the second time you were there about the "+4" program?

A. No.

* * *

Q. All right. So, other than complaining to [the manager] during the first month of your employment the first time you worked there –

A. Yes.

Q. – you never raised this issue a second time?

A. No.

{¶24} Similarly, Ayers testified as follows:

Q. And during the first time you were there, did you receive pay in accordance with that "+4" system?

A. Yes.

Q. Did you complain about it?

A. Yes.

Q. Who did you talk to?

A. * * * I talked to Ken [Joseph] the first day also.

* * *

Q. -- and talked to Mr. Joseph. When you talked to Mr. Joseph complaining about the '+4,' what did you say to him?

A. Like I just told you. I said we're basically here for 48 hours, you know, and we're only being paid for 32 of those.

Q. What did Mr. Joseph say in response?

A. He just laughed it off, you know.

12

Q. Okay. Well laughed it off. Did he say: That's just the system?

A. He said: That's the way it is.

Q. When did you have this conversation?

A. I had that conversation multiple times in my seven-year tenure with the company.

* * *

Q. You knew coming in the second time that the "+4" system was the system that they used at EMT?

A. Yes.

Q. No doubt about it in your mind?

A. I knew it was. Yeah.

Q. You had multiple discussions, according to your prior testimony, and they weren't going to change it?

A. Right.

Q. So, when you accepted the position, you knew exactly what the terms and conditions would be?

A. Yes.

Q. No doubt about it; right?

A. Right.

Q. Okay. And as far as you know, they kept their end of the bargain; they paid you in accordance with the "+4" system?

A. Yes. Yes.

* * *

Q. * * * The simple, narrow thing is you knew the "+4" program was the program when you got hired. And you knew they weren't going to change it for you; correct?

13

A. Correct.

Q. Okay. And you still took the job?

A. Yes.

Q. And you still worked there for another period of time. How much, two years?

A. Three years.

{¶25} Based on the foregoing testimony, we conclude that EMT met its burden under Civ.R. 56(C) by producing evidence of an implied agreement with appellants to exclude up to 8 hours of sleep time from hours worked under the Plus Four Policy of the Handbook.

{¶26} We additionally conclude that EMT produced evidence of an express agreement, as demonstrated by appellants' deposition testimony. It is undisputed that the Plus Four Policy of the Handbook was explained to appellants when they were initially employed by EMT, and they were both aware that the policy was still in place at the time of rehire. Ayers further testified that a copy of the Handbook was made available to him:

Q. Was there an employee handbook?

A. * * * When I got to the Warren station, I never saw an employee handbook other than what was in the day room that was like in a binder. But then one day that was taken from the day room and was told that if anybody wanted to look at it they had to go to the office, could not take any photos of it, could not take any copies of it, could not have a personal copy of their own.

{¶27} One testified that she again reviewed the Handbook, a few months after she was rehired:

Q. Okay. And the second time you were employed, did you ask for a handbook?

14

A. No.

Q. And do you recall acknowledging that you had seen the handbook?

A. It was a few months into it. They finally brought one into the day room. And but we were told that we could not take it out of the building.

* * *

Q. Okay. And it was available to you to look at?

A. Yes.

Q. Okay. Did you do so –

A. Yes.

Q. – availed yourself of the opportunity to look at the handbook?

A. Yes.

One also admitted to executing a written acknowledgment of the Handbook on May 15, 2018, which states: "I, Elita One, have read and understand the EMT Inc. personnel and policy manual and I agree to adhere to all company policies and amendments to it."

{¶28} Appellants failed to meet their reciprocal burden under Civ.R. 56(E) to produce evidence demonstrating that a genuine issue of material fact remains with regard to the existence of an express or implied agreement. Accordingly, summary judgment was properly granted in favor of EMT on appellants' FLSA claim.

{¶29} Appellants' sole assigned error is without merit, and the judgment of the Trumbull County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, J.,

MATT LYNCH, J.,

concur.

Case No. 2021-T-0011